JUDGE LINDSAY
delivered the opinion of the court.
The policy of insurance made the foundation of this action was issued by the St. Louis Mutual Life Insurance Company on the 16th day of August, 1867. The contract it evidences is that in consideration of the sum of $690.60 in hand paid, and an annual premium of the same amount to be paid on the 16th day of August in each and every succeeding year for nine years, said company assured the life of I. Calvin Grigsby for the term of his entire life in the sum of ten thousand dollars, for the sole use of Amanda L. Grigsby, in trust for herself and *312 the children of the insured. The following provisos were incorporated into the policy:
“First, that if default shall be made in the payment of any of said annual premiums hereafter to become due and payable, at the time hereinbefore mentioned and limited for the payment thereof respectively, then and in such cases such default shall not work a forfeiture of this policy; but the sum of ten thousand dollars, the amount insured, shall be then commuted or reduced to such proportionate part of the whole sum or amount insured as the sum of the annual payments so paid by the said insured shall bear to the sum of the ten annual payments herein stipulated and agreed to be paid by said I. Calvin Grigsby as aforesaid.
“Second, if the said insured shall fail to pay annually in advance the interest on any unpaid notes or loans which may be owing by said insured to said company, on account of any of the abo^e-mentioned annual premiums, at the office of the company in the city of St.-Louis, or to agents when they produce the receipts signed by the president or secretary, then and in every such case the said company shall not be liable for the payment of the sum insured or any part thereof, and this policy shall cease and determine.”
The premiums upon this policy were to be paid upon what is called the half-note plan. The cash payments were made and notes executed in 1868 and 1869, but the insured failed to pay or in any way arrange the premium due on the 16th day of August, 1870. He also failed to pay in advance the interest on his then outstanding notes.
In November, 1870, Grigsby was requested to re-instate the policy. He declined to re-instate it, but agreed to pay the interest in default, and to accept a commuted or reduced policy for the sum of three thousand dollars. The company accepted this proposition, received said interest, and issued to him the following certificate:
*313 “Policy No. 7,725, insuring the life of I. Calvin Grigsby, is hereby renewed and continued in force for the commuted amount of three thousand dollars until the 16th day of August, 1871, but this certificate shall not be valid and binding on the company until the premium (as per margin) is paid, and the receipt countersigned by S. K. Foote, agent at Louisville,- Ky.
(Signed) ¥m. T. Selby Seo’y:
This certificate was duly countersigned and the necessary amount paid.
Grigsby failed to pay the interest on the 16th of August, 1871, on the note executed for the aggregate sum of the three notes given in 1867, 1868, and 1869, and died on the 2d of January, 1872.
Appellee claims that she is entitled to recover the whole amount of the original policy, less the sum due as premiums for 1870 and 1871. She alleges but fails to prove that prior to the default in 1870 the company had adopted what she denominates the Massachusetts plan, and that it was bound to keep the policy alive by applying to the payment of the premiums the reserve fund to which she was entitled, and that by such application the policy would have been kept in full force up to and after the time at which her husband died. The failure of proof upon this point renders it unnecessary that it shall be further.noticed. Appellee further claims that her deceased husband was a lunatic in November, 1870, when he accepted the commuted policy, and that its acceptance was obtained by the fraud of the company.
The proof fails to show that Grigsby was at that time or at any subsequent time insane; but if it did, we do not see that such fact would operate advantageously to the appellee. By the terms of the contract the failure to pay the premiums as they became due involved the reduction of the policy in the proportion hereinbefore set out. The party who was in *314 default could not compel the company to re-instate the policy for the full amount, and the agreement of November 2, 1870, secured to Mrs. Grigsby the most that she then had the right to claim.
The company resists her right to recover on the commuted policy on the ground that the failure to pay the interest in advance on the note executed when the agreement to commute was entered into released it from all liability and determined the policy. This note was for $817.41. The amount of interest due on the 16th of August, 1871, was $49.04. The proof shows that appellee was then entitled to a dividend amounting to $42.07. The application of this dividend to the payment of the interest would have reduced it to $6.97. The direct question is presented whether from the failure to pay this amount, or even the whole of the interest due, the forfeiture of all rights under the commuted policy followed as a legal and necessary consequence.
Some importance is attached to the fact that the certificate evidencing the commutation continued the new agreement in force only until the 16th day of August, 1871. Ve regard this attempting limitation as to time as unavailing. The company accepted the interest then in arrears, and thereby re-instated the original policy except as to' the amount of insurance ; and by the terms of that policy it was to continue in force during the whole term of the natural life of the insured.
The conditions in policies of life insurance providing for forfeitures for the non-payment of premiums in exact accordance with the terms of the agreement have been upheld and enforced by the courts. Such forfeitures are not regarded as being in the nature of penalties. It is considered that in agreements of this character time is of the essence of the contract. They are contracts to be kept in force from year to year at the will of the insured. The right to keep the policy alive by the payment of the stipulated premiums is a privi *315 lege secured to the insured by his agreement with the insurer. He may exercise or abandon this privilege at his discretion. But if he does abandon it, those beneficially interested can not complain that the insurer refuses longer to be bound by a contract that has lost all the elements of mutuality.
Where, as matter of favor to the insured, credit is extended him for some portion of a cash premium, the failure to pay the note representing such portion is regarded as a failure to pay the premium, and the policy will be forfeited. In this case there has been no failure to pay either the cash portion of a premium or to satisfy a note representing any portion of a cash premium.
By the contract of November 2, 1870, the original policy was commuted. It thereby became essentially a paid-up policy, except that the company had the right, should its affairs render it necessary and proper, to demand the payment in whole or in part of the note executed for the unpaid portion of the three annual premiums. It does not appear from the record before us nor from the charter of the company nor from the amendment thereto that the failure to pay these premium notes or such portion thereof as may be called for will work a forfeiture of the policy of insurance. But, however this may be, that question does not arise, as the insured was never required to pay any portion of the principal of the note held against him by the company.
The complaint is that the interest was not paid in advance. It seems that a distinction is taken between the principal sum due and the interest that may accrue thereon. From the peculiar character of the contract this distinction may exist, but we do not see that its existence can convert the accruing interest into an annual premium, for the non-payment of which the rights secured by the paid-up policy may be forfeited.
If instead of executing his note Grigsby had paid off the amount due ■ to the company, and then borrowed a like sum, *316 agreeing that the commuted policy should be forfeited if he failed at any time to pay the annual interest promptly in advance, it is evident the forfeiture would not have been enforced. As matter of fact, the company agreed to treat these unpaid notes as loans to Grigsby. The second proviso, heretofore quoted, so denominates them. The language is that “if the said insured shall fail to pay annually in advance the interest on any unpaid notes or loans which may be owing ... on account of any of the above-mentioned annual ;■premiums,” then the company shall no longer be liable to pay the amount secured by the policy.
The term loan has a direct and natural connection with the words annual premiums, and it is manifest that the contemplated loans were to be. made up of such premiums. The interest annually accruing on these loans is in no sense an annual premium due from the insured to the insurer. The. loan itself does not represent a cash premium, but a debt which the insured may never be required to pay, and which ordinarily will be satisfied out of the dividends or the insurance to which the assured may be entitled. The considerations applying to the payment of the annual premiums have no application to the payment of interest on these notes or loans. On the prompt payment of the premiums depends the mutuality of the contract and the ability of the insurance company to meet its obligations. As to this policy, the contract was completely executed so far as the assured was concerned. The annual premiums had all been paid in the mode prescribed by the contract itself, and the company was bound to look to the insured for the payment of the interest due upon the notes or loans owing by him, and to enforce the payment thereof as though he was a stranger to the contract under which appellee claims.
She and those she represents can not be affected by the default of the party to whom the loan was made, except that *317 her policy and all profits and payments to which she is entitled thereunder are pledged and hypothecated to the company for the ultimate payment of the loan and its accrued interest. The failure of Grigsby to pay the interest due on the 16th of August, 1871, did not affect the ability of the company to meet its obligations to any greater extent than the failure of any other debtor to pay the interest due from him would have affected it; and as the collaterals pledged by an ordinary debtor to secure the payment of his debt will not be forfeited to the company for the non-payment of interest in exact accordance with the terms of the loan, notwithstanding his agreement that they shall be so forfeited, we see no reason why the company shall be allowed to forfeit the paid-up policy of insurance hypothecated to secure the ultimate payment of the “note or loan” owing by Grigsby. The failure to pay the interest due on the note or loan is a default which admits of a certain compensation. The insurance company holds and has always held ample security. We have already seen that the reasons that forbid courts of equity from interposing to relieve against forfeitures for the non-payment of premiums or notes representing portions of cash premiums do not apply in cases like this.
We are satisfied from the nature of the contract that the forfeiture was intended as a penalty to secure not the ultimate but the prompt payment of the interest to become due, and as the default is only in time, and as the company can be given all that it stipulated to receive, a case is presented in which relief can and ought to be afforded.
The chancellor adjudged the company to pay the amount of the commuted policy, less the note due from Grigsby and its accrued interest up to the date of the payment. His said judgment conforms to the principles herein announced, and it is therefore affirmed, as well on the original as on the cross-appeal.