KNICKERBOCKER LIFE INSURANCE COMPANY *v.* VASHTI HARLAN.

INSURANCE. *Paid-up policy. Conditioned upon payment of interest on a note. Forfeiture by default.*

H. surrendered a $5,000 policy of life insurance, and accepted what was called "a paid-up policy" for $2,000, and at the same time executed his promissory note, in the form of a receipt for a loan, for $624, the amount of the credit portion of the premiums on the original policy. The new policy stipulated

that the amount of the note was to be deducted, after the death of the insured, from the sum thereby assured.   And it recited that it was issued in consideration of the surrender of the original policy, of the representations made in obtaining the same, "and of the payment of the interest annually on the notes or credits given for premiums on the policy surrendered (which notes or credits, amounting to $624, are now charged against this policy), on or before the 27th of September in each year."   The second condition of the new policy was, that "if the interest on said $624 note or credit shall not be paid on or before the day mentioned, the company shall not be liable to pay the sum assured, or any part thereof, and said policy shall cease and determine, and become null and void, without notice to any party or parties interested."   *Held,* that, by these stipulations and conditions, a default in the payment of the interest on the consolidated note operates a forfeiture of the policy.

ERROR to the Circuit Court of Monroe County. ·

Hon. J. A. GREEN, Judge.

The case is stated in the opinion of the court.

*Houston & Reynolds,* for the plaintiff in error.

The failure to pay a premium when due avoids a policy of insurance.   *Howell* v. *Knickerbocker Ins. Co.,* 1 Big. on Ins. 578 ; *Robert* v. *New England Ins. Co.,* 1 Big. on Ins. 634 ; *Want* v. *Blunt et al.,* 12 East, 183 ; *Phœnix Ins. Co.* v. *Sheridan,* 2 Big. on Ins. 583 ; *Robert* v. *New England Ins. Co.,* 2 Big. on Ins. 141 ; *Howard* v. *Continental Ins. Co.,* 4 Big. on Ins. 8 ; *Williams* v. *Washington Ins. Co.,* 4 Big. on Ins. 56 ; *Roehend* v. *Knickerbocker Ins. Co.,* 4 Big. on Ins. 278 ; *Union Ins. Co.* v. *McMillan,* 4 Big. on Ins. 384.   The failure to pay the interest on the note operated as a forfeiture of the policy, just as if default had been made in the payment of a premium.   *Patch* v. *Phœnix Ins. Co.,* 3 Big. on Ins. 777.

*Nugent & McWillie,* for the defendant in error.

Construing the contract most strongly against the company, as the rule is, we are bound to conclude that the intention of the parties was to constitute the loan evidenced by the note a mere charge upon the policy, and make it purely an offset or counter-claim.   It seems clear to us that the company had the continuing right to sue upon the note, and was, therefore, bound to pay the policy, even in case of default in the payment of interest in advance.   *Brook* v. *Insurance Co.,* 49 Vt. 442 ;

*Insurance Co.* v. *Wright*, 1 Wall. 468; *St. Louis Ins. Co.* v. *Grigsby*, 4 Big. on Ins. 633.

CHALMERS, J., delivered the opinion of the court.

W. H. Harlan took out a policy of insurance for $5,000 on his own life, in favor of his wife. After paying for several years the cash half of the annual premiums, and executing his notes for the credit half of the same, he, on the 27th of September, 1872, surrendered his $5,000 policy, and accepted what was called " a paid-up policy " for $2,000. There was at the time the sum of $624 due on the outstanding notes which had been given for the credit portion of the annual premiums on the original policy. For this amount a consolidated note was executed, and the new policy stipulated on its face that the amount of this note was to be deducted, after the death of the insured, from the sum assured by the new policy. Said policy was also conditioned upon the annual payment by the insured, on or before the 27th of September of each and every year, of the interest, at six per cent, to become due on this note.

The second condition of the new policy was, that " if the interest on said note or credit shall not be paid on or before the day mentioned,   *   *   *   the company shall not be liable to pay the sum assured, or any part thereof, and said policy shall cease and determine, and become null and void, without notice to any party or parties interested."

Harlan died after having twice paid the interest due on the note, but after default made in payment of the sum due last before his death. To this suit, brought after his death, by his widow, to compel payment of the policy, the insurance company pleaded the forfeiture by reason of the default in the payment of the interest due on the 27th of September last preceding the death of the insured. To these pleas the court below sustained a demurrer, on the ground that they afforded no defence to the action.

This ruling, as we gather from the arguments of counsel, was based upon the idea that the interest to become due on

the note was not to be considered, under the contract, as properly the annual premiums on the new policy, but as merely constituting an integral portion of the old debt due; that the new policy was, in fact as well as in name, "a paid-up" one; that nothing was due, or was to become due on it; and that it was merely pledged to the company as a security for the ultimate payment of the principal, and interest which would be due on the note at the date of the death of the insured. Hence it is said that the failure to pay the interest at the periods stipulated will not work a forfeiture, but that the assured will be still entitled to recover the full amount of the policy, less the note and accrued interest.

However plausible this theory may be, and however wise it might have been for the insured to have so stipulated with the company, if he could have induced them to agree to such a contract, it certainly is not the contract as actually made. The first clause of this instrument recites that it is issued in consideration of the surrender of the original policy, and of the representations made in obtaining the same, "and of the payment of the interest annually on all notes or credits given for premiums on the policy surrendered (which notes or credits, amounting to $624, are now charged against this policy), on or before the twenty-seventh day of September in each year."

Then follow various conditions, the second of which is set forth above. Contemporaneously with the issuance of the policy, the insured executed the note for $624 (in form of a receipt for a loan), by which he obligated himself to account for or pay the same out of the proceeds of the policy then received, and stipulated to pay interest thereon in advance, at six per cent per annum, on the 27th of September of each year, as long as he lived; "and it is hereby stipulated [such is the recital] and agreed that the failure to pay said interest at the time above specified, shall cause said policy to cease and determine."

How there can be any mistake as to the meaning of this

language, or any room for construction in regard to it, we are at a loss to discern.

It is evident that, by the agreement of the parties, the new policy was "paid up" only in name, and that the right to recover the sum assured by it was to be earned only by the prompt and faithful payment, in future, of the interest on $624. Does it make any difference that this sum was already due the company on the old policy? Certainly not.

Instead of forfeiting and abandoning the old policy, Harlan voluntarily elected to apply for and receive a new one, conditioned that it should be void upon his failure to pay the interest on the sum already due. There was no sort of compulsion upon him to do this. It is to be observed that, upon the surrender of the old policy, he did not obtain or demand "the surrender value" of his policy in cash, if by the terms of the contract it had any surrender value, which does not appear; but he applied for and obtained a new policy, which, though called "a paid-up policy," was distinctly conditioned upon a prompt payment by him of a certain sum, to wit, the annual interest to become due on the note then executed. If it be said that it is a harsh rule that would deprive his widow of $2,000 because of the default in the payment of an insignificant sum, the obvious reply is, that the more insignificant the sum the easier it was for the husband to have paid it. The annual premiums on life-policies are usually small as compared with the sum assured, but as this enables the holders of them the more readily to meet the burden, it should impose the greater obligation to be prompt in their discharge.

In the case of *St. Louis Mutual Ins. Co.* v. *Grigsby*, 4 Big. on Ins. 633, the Supreme Court of Kentucky, upon a policy quite similar to this, held that, in the view of a court of equity, the contract would be treated as a mortgage, and a forfeiture thereby avoided.

We are not called upon to say whether the distinction between a court of equity and a court of law is a sound one,

as here applied, nor does it distinctly appear whether the Kentucky court rested their decision upon the difference between the two systems. The decision seems to be almost, if not quite, exceptional, and is criticised and declared unsound in *Anderson* v. *St. Louis Mutual Ins. Co.*, 5 Big. on Ins. 527; *Tait* v. *New York Ins. Co.*, 4 Big. on Ins. 479; *Smith* v. *St. Louis Mutual Ins. Co.*, 2 Tenn. Ch. 727; *Russum* v. *St. Louis Mutual Ins. Co.*, 5 Big. on Ins. 243. Forfeitures of insurance policies on account of failure to pay *interest* on premium-notes were enforced in all these cases, as also in *Patch* v. *Phœnix Ins. Co.*, 44 Vt. 481. An able note and partial collection of the cases will be found in 2 Cent. L. J. 125, which is also copied into 5 Big. on Ins. 246.

In *Russum* v. *St. Louis Mutual Ins. Co.*, *supra*, it was held, and, we think, properly, that a forfeiture would not be allowed to take place where there was due the insured, upon the books of the corporation, net earned dividends sufficient to extinguish the interest due, and that the insurers would be compelled to apply such dividends so as to prevent a forfeiture. This rule we think a sound one, either in a court of law or equity, though it was denied, where the course of business of the company was shown to be otherwise, in *Anderson* v. *St. Louis Mutual Ins. Co.*, *supra*.

In the case at bar, we decline to involve ourselves in the mazes of strained and doubtful constructions for the purpose of remedying supposed hardships, and are content to enforce the contract as the parties made it, there being no pretence of fraud or undue advantage.

We see nothing in the circumstances attending the default in payment, to relieve the party of its consequences. However unfortunate and disastrous were the results of his last illness to himself and family, it cannot be pretended that the insurance company were in any manner responsible for it, and he must be held to have assumed the risks necessarily attendant upon a postponement by him of the payment to the last day

limited by the contract. It follows from these views, that the demurrer to the pleas was improperly sustained.

The charges given to the jury were unsound, in so far as they conflict with the principles here announced.

Judgment reversed and cause remanded.