## WILLIAM W. HOLMAN *vs.* THE CONTINENTAL LIFE INSURANCE COMPANY.

Hartford District, May T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

A non-forfeiture life insurance policy for the term of ten years for $1,000 contained a provision that the policy should lapse upon the non-payment of any annual premium and of interest annually in advance on any outstanding premium notes which might be given; but that, after the payment of two annual premiums, in case of default the company would convert the policy into a paid-up one for as many tenth parts of the sum originally insured as there had been annual premiums paid when the default was made, provided application for such conversion was made within one year after the default. The insured had paid two annual premiums, a part in cash and the remainder in premium notes which were outstanding. He made default in the payment of the next premium and applied to the company for a paid-up policy. The company thereupon endorsed upon the policy that it was to pay $200, " subject to the terms and conditions expressed in the policy." Thereafter the insured paid the interest on the outstanding premium notes annually for two years, but paid no interest thereafter. Held—1. That the endorsement upon the policy was equivalent to a paid-up policy. 2. That the policy as thus endorsed

was to be construed as forfeitable upon the non-payment of the interest on the outstanding premium notes.

[Argued May 18th—decided July 27th, 1886.]

ACTION upon a policy of life insurance; brought to the Court of Common Pleas of Hartford County, and reserved, on the plaintiff's demurrer to the defendant's answer, for the advice of this court. The case is fully stated in the opinion.

*H. B. Freeman*, for the plaintiff.

By the payment of two annual premiums, the plaintiff purchased a "paid-up" policy, non-forfeiting in its terms, and the following endorsement was made on the original policy: "This policy having lapsed after two annual payments, is hereby recognized as binding upon the company for two tenths, or two hundred dollars, subject to the terms and conditions expressed in this policy, and in the quitclaim to the company, bearing even date with this entry." Payment of the policy is refused, because there has been a failure to pay in advance the interest on the outstanding premium notes.

This claim of forfeiture cannot be sustained. Forfeitures are not favored in the law. After many and conflicting decisions, it is now settled that the forfeiture clause, for the non-payment of premium, and the interest on premium notes in a life insurance policy, is not in the nature of a penalty, but is to be enforced and the policy declared void. But it must be clearly provided for in the policy. Courts will not extend, by implication or construction, the operation of a condition, the breach of which involves a forfeiture, to a case *not clearly within it.* May on Insurance, § 408. Forfeiture is an extreme remedy, and is *not to be inferred* upon any unnatural presumption. The original policy having lapsed and become converted into a "paid-up" policy, the "non-forfeiture" clause is thenceforth a controlling feature of the contract. This feature is made alluring and attractive. And there is no clause of the policy that can

be construed to nullify the effect of the non-forfeiture stipulation. To construe the policy otherwise would make it a delusion and a snare, "mislead the insured, and fraudulently expose him to the very danger from which he would reasonably understand he was to be delivered, by the saving process of conversion worked in the policy."

The Northwestern Mutual Life Insurance Company raised this very question in seven different states, and their claim of forfeiture for the non-payment of interest was always decided against them. These several cases decide "that as often as a complete annual premium shall be paid the policy shall become a paid-up policy for one tenth of the whole amount insured, *not subject to the condition or contingencies, so far as payments are concerned, which continue to the remainder or unpaid part of the policy.*" *Ohde* v. *N. West. Mut. Life Ins. Co.*, 40 Iowa, 364; *Hull, Adm'r.*, v. *The same*, 39 Wis., 406; *Symonds* v. *The same*, 23 Minn., 500; *N. West. Mut. Life Ins. Co.* v. *Little*, 56 Ind., 509; *Fithian* v. *N. West. Mut. Life Ins. Co.*, 4 Misso. App., 390; *N. West. Mut. Life Ins. Co.* v. *Ross*, 63 Geo., 199; *Same* v. *Bonner*, 36 Ohio St., 66. This defendant has already raised this question of forfeiture in two states, and it has in both been decided adversely to its claim. *Cowles* v. *Continental Life Ins. Co.*, before Supreme Court of New Hampshire, January, 1885, 14 Ins. Law Journal, 674; *Bruce* v. *The same*, Supreme Court of Vermont, February, 1886, 4 Eastern Reporter, 453.

*T. M. Maltbie*, for the defendant, cited *Life Ins. Co.* v. *Bonner*, 36 Ohio St., 51; *Life Ins. Co.* v. *Robinson*, 40 id., 270; *Baker* v. *Union Mut. Life Ins. Co.*, 43 N. York, 283; *Attorney Gen.* v. *Nor. Am. Life Ins. Co.*, 82 id., 172; *Russum* v. *St. Louis Mut. Life Ins. Co.*, 1 Misso. App., 228; *Knickerbocker Life Ins. Co.* v. *Dietz*, 52 Maryl., 16; *Same* v. *Harlan*, 56 Miss., 512; *Pitt* v. *Berkshire Life Ins. Co.*, 100 Mass., 500; *Williams* v. *Republic Ins. Co.*, 19 Mich., 469; *Patch* v. *Phœnix Mut. Life Ins. Co.*, 44 Verm., 481; *N. York*

*Life Ins. Co.* v. *Statham*, 93 U. S. Reps., 24; *Klein* v. *Life Ins. Co.*, 104 id., 88; *Thompson* v. *Life Ins. Co.*, id., 258.

LOOMIS, J.   The complaint in this case seeks to recover the amount due under a so-called "paid-up" policy of insurance on the life of William W. Holman, for the benefit of his wife.   The demurrer to the defendant's answer raises the question whether the defense therein set forth is sufficient in law to prevent a recovery by the plaintiff, and this depends entirely upon the contract of the parties.   By the terms of the contract as originally made the defendant was to receive an annual premium of one hundred and eight dollars and seventy-two cents during the continuance of the policy for the term of ten years, payable, as appears from the margin, partly in cash and partly by note.   At the end of the term, or upon the previous death of the insured, the defendant was to pay one thousand dollars, "deducting therefrom all indebtedness to the said company on account of this policy, if any, then existing," subject to sundry express conditions and agreements mentioned in the policy, the third and fourth of which only are involved in this case. These are as follows :—

"*Third.* If the said assured shall not pay the said annual premiums on or before noon of the several days hereinbefore mentioned for the payment of the same, and the interest annually in advance on any outstanding premium notes which may be given for any portion thereof, or shall not pay, at maturity, any notes or obligations given for the cash portion of any premium or part thereof,—then, and in every such case, this policy shall cease and determine, and said company shall not be liable for the payment of the sum insured, or any part thereof, except as hereinafter provided."

"*Fourth.* If, after the receipt by the company of two or more annual premiums upon this policy, default shall be made in the payment of any subsequent premium when due, then, notwithstanding such default, this company will convert this policy into a 'paid-up' policy for as many tenth parts of the sum originally insured as there shall have been

complete annual premiums paid when such default shall be made : Provided that this policy shall be transmitted to and received by this company, and application made for such conversion within one year after such default."

The defendant's answer, after admitting the issuing of the policy, its terms and demand and refusal to pay, as alleged in the complaint, further alleged that—

" 2. On the first day of April, 1874, the plaintiff had paid to the defendant in cash a portion of two annual premiums, and had given to the defendant premium notes for the remaining portion of said premiums, which notes were then and are now outstanding and unpaid.

" 3. Thereafter the plaintiff made default in the payment of premiums, and transmitted said policy to the defendant, and with his wife, Rebecca J. Holmes, applied to the defendant to adjust the insurance under said policy, according to the stipulations thereof, by reducing the amount thereof to $200; and in said application agreed to pay the defendant, annually, in advance, the interest on all outstanding notes given in part payment of annual premiums.

" 4. Thereupon the defendant made the following endorsement upon said policy of insurance : ' This policy having lapsed after two annual payments, is hereby recognized as binding upon the company for two tenths thereof, or $200, subject to the terms and conditions expressed in this policy and in the quitclaim to this company, bearing even date with this entry;' and returned said policy to the plaintiff, who accepted the same.

" 5. Thereafter the plaintiff paid the interest on said outstanding premium notes, annually, in advance, until the year 1876, when he ceased to pay the same, and has not since paid the same.

" 6. Said policy provided that if the assured should not pay the interest annually, in advance, on any outstanding premium notes given for any portion of the annual premiums on said policy, then said policy should cease and determine, and said company should not be liable for the payment of the sum insured or any part thereof.

" 7. By reason of the failure and neglect of the plaintiff to pay the interest annually, in advance, on said outstanding premium notes in the year 1876, and thereafter, said policy of insurance has ceased and determined, and the defendant is not liable for the payment of the sum insured, or any part thereof."

The plaintiff's reply was as follows:

" The plaintiff demurs to the answer of the defendant, as the facts therein stated are insufficient in the law, because the paid-up policy upon which complaint is brought was non-forfeiting by its terms, and contained no provision that the failure to pay interest on the outstanding premium notes should work a forfeiture of said paid-up policy, and the same is nowhere averred in said answer."

The special ground of this demurrer presents the precise question involved in the case, namely,—Does the paid-up policy contain a provision that the failure to pay interest on the outstanding premium notes shall work a forfeiture of the policy?

This question is different from the one considerably discussed in other jurisdictions, namely—What will entitle the insured to a paid-up policy, and what provisions as to forfeiture should it contain? The parties have settled these questions themselves by giving and accepting the reduced insurance; and if the policy thus accepted contains a provision whereby the failure to pay interest will make it void, then the plaintiff by his pleadings impliedly admits that he has no case, even though he would have been entitled to a different policy under the original contract.

The new contract, whereby the insurance was reduced to two hundred dollars, states that the company recognize the policy binding for that sum, " subject to the terms and conditions expressed in this policy and in the quitclaim to this company bearing even date with this entry." This, in effect, is the same thing as a new policy, containing the terms and conditions of the old one as far as applicable. Now among these conditions is the clear stipulation that " if the assured shall not pay the interest annually in ad-

vance on any outstanding premium notes, this policy shall cease and determine." In what manner did this provision become eliminated from the paid-up policy?

It cannot be claimed to be inapplicable, because there is a subsisting obligation to pay this interest annually in advance recognized not only in the original policy but in the quitclaim, whereby the plaintiff and his wife, when they applied for the reduced insurance, made a fresh promise and agreement to pay this interest, and this quitclaim is referred to and made part of the new contract, and the promise on the part of the company is made subject to it as a condition.

But a specious argument always urged against this view by counsel for the insured and sometimes sanctioned by courts, is founded upon what is called the absurd paradox of forfeiting a non-forfeitable policy. The name "non-forfeiting" has undoubtedly been sometimes used to mislead applicants for insurance, and some of the cases refer to the fact that agents for insurance companies have made declarations and issued circulars to the effect that, after the payment of two annual premiums, the policy would be binding on the company without any further attention on the part of the holder.

But no such fact appears in this case, and upon the admitted facts it is certain that the insured was not misled, for he voluntarily offered to pay and did actually pay interest annually in advance on the paid-up policy until the year 1876. It is manifest that both parties at the time and for several years subsequently construed the contract alike. There was no trap, therefore, into which the plaintiff was unwarily led.

But courts need not be misled by mere appeals to prejudice. The contract is not to be construed by its mere label, but by its written terms, and upon referring to these we see at once that the policy is non-forfeitable only to a very limited extent.

No one has ever claimed that it extends beyond the payment of an annual premium and interest, and even in these respects it is non-forfeitable only at the option of the holder, who must transmit the policy to the company and make

application for its conversion into a paid-up policy within one year after default. But a glance at the policy will show that even after the conversion the insured can have no security against forfeiture except by observing the conditions. If without the consent of the company he travels outside of the prescribed limits mentioned; if he engages in certain specified hazardous occupations; if he becomes intemperate or is addicted to vice of any kind to the extent of permanent impairment of his health; if he is convicted of felony; if he dies by his own voluntary act or in consequence of a duel or under the sentence of the law, the paid-up, non-forfeitable policy could not for a moment avail, but would thereby become null and void.

Any argument, therefore, founded merely upon the use of the term "non-forfeitable," is of little weight. We must, as in all other cases, construe the contract by the language used in it. In this case the question is confined to the language of the saving clause, which is the fourth. Does that save the insured from the consequences of a failure to pay interest, the same as it does in the case of failure to pay future annual premiums? The third clause, which it is indispensable to consider in this connection, clearly specifies two distinct defaults, either of which will forfeit the policy; first, failure to pay the annual premiums when due, and, second, failure to pay interest in advance on outstanding premium notes. So far the meaning cannot be mistaken. Now how does the saving clause which follows affect the question? It only relieves the insured (after the payment of two or more annual premiums) from one of those defaults—" the payment of any subsequent premium when due." Not a word is said about interest. The saving clause, therefore, is not co-extensive in its operation with the preceding forfeiture clause, as it should be to justify the plaintiff's construction. It is not easy to conceive why the parties, having clearly in mind the distinction between the two causes of forfeiture mentioned in the third clause, should in the next, in terms, confine the relief to one only, if they intended to place both on the same ground. To accept the

plaintiff's view would be for the court virtually to insert what the parties omitted. If it be suggested that the distinction between interest and premium note was unnecessary, the answer is twofold. In the first place, the parties have made such a distinction, and presumably had it in mind all through, and in the second place, the distinction is well founded, for the interest contract is not a mere incident of the note, but distinct from it; it is payable in advance at the beginning of each year, without reference to the time when the notes become due. And herein is a distinction of some importance between the case at bar and some of the cases from other jurisdictions, where the premium note was payable at a future day with interest without separate contract as to the latter. In such case the interest, being a mere incident of the note, could not be separately recovered, and there would be some reason for holding that if the note was to be paid only by deducting it from the policy upon its final adjustment, the interest also must follow the same course, for it must follow the note.

But is the distinction which we have assumed that the policy in question makes, reasonable and just? The requirement to pay interest annually is indispensable to the success of this system of insurance where credit is given. The annual premium for the risk here was $108.72. The policy was a participating one, under which the insured was to receive his fair proportion of dividends. The company could not treat this matter as entirely isolated from all other policies. Some stable basis must be found upon which an intelligent estimate could be made of the company's ability to pay losses, expenses and dividends. Such basis can only be found in the assumption that the company will certainly receive the annual premium in money or a fair equivalent in the way of annual interest. The reception of the note payable at a future day cannot possibly be the same thing as payment in money unless interest is paid on the credit annually. The relief from forfeiture provided for in the policy is based upon the equitable idea that the reduced policy represents the proportionate amount of insurance

fully paid for upon a cash basis. If the insured wishes to be secure from forfeiture, he may pay the annual premiums in money. If he insists on a credit, he may take a reduced policy, which exempts him from the payment of future annual premiums, but he is still subject to the rigorous condition to pay interest or lose the benefit of his policy.

In support of these views we cite sundry cases from other jurisdictions.

The case of *Knickerbocker Life Insurance Co.* v. *Dietz*, 52 Md., 16, decided in April, 1879, is very strong for the defendant. The original policy in substance was the same in every respect as the one under consideration. It was dated May 5, 1868, and under it the insured paid premiums in cash and notes up to May 5, 1873, when he surrendered the policy and obtained a new one for five tenths of the amount originally insured. The second policy stated that it was issued in consideration of the surrender of the previous one, and accepted by the insured upon the express condition and agreement that if the interest should not be paid on or before the day named, the policy should be null and void. The interest was not paid on the 5th of May, 1874, and the policy was cancelled by the company. Soon after this the insured tendered the interest due, but the company refused to receive it.

The questions arose under a bill in equity, alleging that no interest was required to be paid May 5th; that the clause that made the new policy void on non-payment of interest was inconsistent with the true meaning of the contract; that the stipulation as to forfeiture was in the nature of a penalty, against which a court of equity should relieve, and praying for such construction of the contract and for a decree for the payment of the amount of the policy less the notes and interest. It will be seen that the position of the case before a court of equity was more favorable for the claimant than that of the present case, but the court held there was no relief. GRASON, J., in delivering the opinion of the court, said: " The theory on which the amount of the premium is fixed, * * * is that, assuming that a

man of a given age has a prospect of living a certain number of years, as shown by experience and observation, the premium charged is such a sum as, invested annually at a certain rate of interest and compounded, will, at the expiration of that time, amount to enough to pay the policy and cover the expense of the company. To accomplish this result the premium must be punctually paid and invested, and the interest re-invested at the assumed rate. Otherwise the ability of the company to pay the policy, instead of being a matter of reasonable certainty, becomes a mere matter of chance, the business of life insurance ceases to have any scientific or accurate basis, and a policy of insurance becomes a mere wager on the life of its holder. The prompt payment of interest on premium notes is as necessary to the successful working of an insurance company, as well as to the security of the insured, as are the payment of the premium notes themselves. If one policy holder can fail to pay his interest, any number of them may do the same, and the ruin of the company would be the inevitable result. The time for the payment of interest on premium notes is of the essence of contracts of insurance."

The case of *Knickerbocker Insurance Co.* v. *Harlan*, 56 Miss., 512, decided in January, 1879, was an action on a paid-up policy which recited that it was issued in consideration of the surrender of the original policy (the provisions of which were similar to those in the case at bar), and which stipulated that if the interest on the premium note was not paid before a specified day, the policy should be null and void. The company pleaded the forfeiture of the paid-up policy by reason of the non-payment of interest; to which plea the plaintiff demurred, precisely as in the case at bar. The court below sustained the demurrer upon precisely the same arguments as are urged in behalf of the plaintiff in the present case, but the judgment was reversed in the Supreme Court, mainly upon the ground that, under a proper construction of the new policy, the right to recover the sum assured by it was to be earned only by the prompt payment in future of the interest on the premium note, and

that it made no difference that the amount of the note was already due the company on the old policy.

In *Alabama Gold Life Insurance Co.* v. *Thomas,* 74 Ala., 578, decided in December, 1883, the action was upon a paid-up policy, as contained in an indorsement upon the original policy, the terms of which were as follows: "In consideration of the payment on the within policy of four annual premiums, less note for $169.20, given for balance due on premium loans to Nov. 11, 1872, said policy is entitled at maturity to a paid-up value of four tenths of the sum insured, subject to deducting note above described, interest upon which is payable annually in advance." It was held that the indorsement was to be construed, together with the original policy, as constituting one contract, and that thereby the parties made a clear agreement that the policy should be void in the event of the failure to pay interest. It was held, as in the Maryland case before cited, that "the payment of interest was of the essence of the contract; that the calculations of insurance actuaries fixing the rates of insurance are based on the theory of prompt payment, so as to afford opportunity for such re-investment as to reap the fruits of compound interest upon the company's moneyed capital."

*Insurance Co.* v. *Robinson,* 40 Ohio St., 270, was an action based on the refusal of the company to grant an application for a paid-up policy pursuant to the provisions of a policy containing provisions identical with the one at bar, so that this case presents the question as to the rights of the parties under a non-forfeiting policy like the one in this case prior to the indorsement made upon it. The default on the part of the insured was simply as to interest on the premium notes. He had paid previously four annual premiums, part in cash and part by note, in the manner provided. GRANGER, C. J., in delivering the opinion of the court said:—"The third condition before us is plain. It clearly states that, upon a failure to pay the interest in advance, the policy should be void. The fifth adds that in such case all payments thereon and all dividends and credits accruing

therefrom shall be forfeited to the company. But the insured claims that the fourth condition modifies the third. This fourth condition makes no reference to interest, either expressly or by reasonable implication. Having failed to pay the interest due on four notes he in effect was in default for a part of each of four annual premiums, besides the one that became due on March 7th, 1876. This interest formed no part of the annual premium due on that day. Its punctual payment was necessary to complete the payment of the premiums due in the four preceding years. * * * We are unwilling to so construe a stipulation worded so plainly, and with such evident care, as to make of no moment a default which the third condition declared of enough importance to destroy the life of the policy."

In *Attorney General* v. *North Amer. Life Ins. Co.*, 82 N. York, 172, decided in September, 1880, the question arose in reviewing the decision of a referee appointed to adjust the claims against an insolvent life insurance company in the hands of a receiver. It appeared that in lieu of certain policies upon which notes had been given for part payment of annual premiums, paid-up policies had been issued containing a provision that in case the interest should not be paid as agreed the policies should become void. Where there was such default in the payment of interest the referee rejected the claims, and the Court of Appeals unanimously sustained the ruling. EARL, J., in delivering the opinion, in answer to the claim that the condition relied upon by the insurance company was unconscionable, and that a case of forfeiture was presented against which a court of equity should relieve, said, among other things:—" It was a contract between the parties that these policies should be carried only so long as interest should be promptly paid upon the notes; and if not paid, that the company should cease to be liable. * * * The provision is not an unusual one. * * * Here was an insurance company doing business throughout the country. Prompt payment of its obligations was deemed important to it. If premiums to such an insurance company are not promptly paid, it may be agreed that the policy may

be forfeited. If notes be taken for premiums, payable at a definite time, the policy may be avoided for non-payment. If notes be taken which are to run to the maturity of the policy and then be adjusted, the policy may be avoided for non-payment of the interest. All these cases stand upon the same footing, and a court of equity can, upon principle, no more relieve against a forfeiture in one of them than in either of the others. The case of the claimants may be treated as if the interest represented premiums to be paid during the running of the policies. * * * There is much authority sustaining the decision of the referee. *Anderson* v. *St. Louis Mut. Life Ins. Co.,* 5 Bigelow, 527 ; *Martin* v. *Ætna Life Ins. Co.,* id., 514 ; *Patch* v. *Phœnix Mut. Life Ins. Co.,* 44 Verm., 481 ; *Knickerbocker Life Ins. Co.* v. *Harlan,* 8 Ins. L. J., 349 ; *Nettleton* v. *St. Louis Life Ins. Co.,* 6 id., 426 ; *Smith* v. *St. Louis Mut. Life Ins. Co.,* 2 Tenn. Ch., 742."

*Patch and Wife* v. *Phœnix Mut. Life Ins. Co.,* 44 Verm., 481, decided in 1872, was an action of assumpsit upon a paid-up policy issued in exchange for an endowment policy upon which two annual premiums had been paid, partly by two notes. The exchange was made pursuant to a memorandum on the back of the first policy to the effect that the company would purchase any of its policies upon which two annual premiums had been paid and issue a new policy for the equitable value of the policy surrendered, " thus making *all* policies *non-forfeitable*." On the margin of the paid-up policy was this statement :—" This policy is conditional on the interest on two notes given in part payment for two premiums paid on No. 10,603, being paid in advance." PIERPONT, C. J., in delivering the opinion, among other things, said :—" The interest upon the notes, by their terms, is to be paid annually, and it is such interest that the memorandum refers to and requires to be paid in advance. Any other construction would be a manifest violation of the meaning and intent of the parties to this contract. The defendant having taken the notes in the place of the money, it could not reasonably be expected that the defen-

dant would do less than to secure the payment of the interest thereon, by making the new policy dependent upon its payment. Treating the memorandum as a part of the policy, and the whole to be considered the same as though it was included in the body of the instrument, the interest upon the notes becomes practically a premium upon the policy, payable annually in advance ; and on failure to pay the same, the company ceases to be liable and the policy is forfeited."

*Russum* v. *St. Louis Mut. Life Ins. Co.*, 1 Mo. App., 228, decided February 28th, 1876, was an action on the original policy, conditioned—1. That default in the payment of future annual premiums should not avoid, but it should be proportionately reduced ; 2. That if the insured should fail to pay annually in advance the interest on premium notes the policy should be void. GANTT, P. J., in delivering the opinion of the court said :—" If the insured had paid the interest on his note on December 2d, 1871, he would, we think, have been entitled to recover two tenths of the sum insured, deducting the unpaid note. Having failed to make that payment the policy is forfeited and the company discharged. We think it impossible to escape this conclusion. * * * It is urged that the two provisions of this policy are inconsistent and contradictory, and that the one which leads to a forfeiture must be rejected ; but the clauses are not inconsistent. * * * All that is needed is for the insured to bring himself within the terms of both. The first is intended to save a forfeiture, which generally would be incurred by the failure to pay the annual premium. To this extent it is a privilege or advantage to the assured. The second proviso insists upon rigorous conditions—in respect of what ? Only of so much of any unpaid premium as the assured, instead of paying in cash, takes the indulgence of only paying interest on at six per cent. If he does not wish to incur the hazard of a forfeiture on account of this part of the premium, his remedy is easy; he can presently pay his note for the premium, and, without more, he has a paid-up, non-forfeitable policy for a fixed portion of the sum con-

templated by the instrument when originally issued.   If he wishes, instead of this, to take the chances of gain, he must at the same time incur the hazard of loss, and cannot complain if he be held to the terms of the contract he has deliberately made."

Other pertinent cases might be cited, but these will suffice to show that the views of the majority of this court have a very strong support in other jurisdictions; and while we concede that the opposing views of the plaintiff are sustained by some courts entitled to very great respect, we think the weight of judicial authority is the other way.

The first case cited in behalf of the plaintiff, to which we will refer, is *Fithian* v. *North Western Life Ins. Co.*, 4 Mo. App., 386, decided October 23d, 1877, by the same court that decided *Russum* v. *St. Louis Mut. Fire Ins. Co.*, (*supra*,) the year previous.   It was held that non-payment of interest did not forfeit the policy in that case, and some of the reasoning at first blush seems different from that in the first case; but LEWIS, J., who delivered the opinion, concurred in the previous one, and no allusion whatever is made to the other case.   It would seem improbable that it was the intention of the court to overrule the first case or that it was considered inconsistent with the last one, and upon examination of the policy we see good ground for a distinction. The first stipulation was that in case of default the company would pay as many tenths of the original sum as there should have been complete annual premiums paid; then followed the provision—"If said premiums, or the *interest* upon any note given for premiums, shall not be paid on, &c., * * * then in every such case the company shall not be liable for the payment of the *whole sum assured* and for such part only *as is expressly stipulated above.*"   Here both notes and interest are put on the same ground, showing that no distinction was intended, and the company in terms is made liable as stipulated—that is, for so many tenths of the original sum insured; and there were other provisions in the policy adverted to in the opinion showing that no forfeiture was to arise because of any default in payments, whether of

notes or interest. This case it will be seen may therefore be widely distinguished from the one at bar, in that the policy in terms secures a proportionate part against forfeiture, while here, as we have seen, it is expressly forfeited for non-payment of interest, with no relief provided.

The same distinction may also be made in regard to the cases of *Hull, Admr.,* v. *North Western Life Ins. Co.,* 39 Wis., 406 ; *North Western Mut. Life Ins. Co.* v. *Little,* 56 Ind., 504 ; *Ohde* v. *North Western Life Ins. Co.,* 40 Iowa, 357 ; *Symonds* v. *Same,* 23 Minn., 491 ; *North Western Mut. Life Ins. Co.* v. *Ross, Admr.,* 63 Geo., 199 ; and *The same* v. *Bonner,* 36 Ohio St., 51. In all these cases the policies were the same as in the case cited from 4 Mo. App., (*supra.*)

Of all the cases therefore cited in behalf of the plaintiff only two remain which are weighty in the opposing scale. The first and the stronger case is that of *Cowles* v. *The Continental Life Ins. Co.,* (the present defendant,) decided July 31st, 1855, by the Supreme Court of New Hampshire, reported in New England Reporter, Vol. 1, No. 10, p. 247, where the action was assumpsit on a paid-up policy identical in its provisions with the one now in suit and where the defense was the same. It is therefore irreconcilably in conflict with the positions we have taken.

In the brief but forcible opinion delivered by Doe, Ch. J., there is no reference to the authorities. The basis upon which the reasoning rests will fully appear from the following quotation :—" A significant clause of the contract is a conspicuous marginal advertisement describing the writing as a ' Non-Forfeitable Endowment Policy.' The forfeiture clause qualified by the provision for a ' paid-up ' policy does not mean that the reduced ' paid-up,' ' non-forfeiture ' insurance is annually forfeitable for non-payment. The strict construction for which the defendant contends would leave the insured exposed to a danger from which the reduction and conversion of the policy would be generally understood to relieve him ; and it is not to be presumed that the document was ingeniously drawn up for the purpose of fraudulently obtaining money by non-forfeiture pretences. All

parts of the contract taken together can be, and should be, reasonably and liberally understood as designed to accomplish the scheme of non-forfeiture for non-payment which men in general would believe the policy invited them to accept."

The other case is *Bruce* v. *The same*, decided February 26th, 1886, by the Supreme Court of Vermont, and reported in The Eastern Reporter, Vol. 4, No. 6, p. 452. This was a bill in chancery to compel the delivery of a paid-up policy and payment of the amount due. The court gave the same construction to the original policy as was given in the New Hampshire case, but certain circulars issued by the company, and the fact, found in the case, that the company regarded the premium notes as given for a loan of money, seem to have been influential with the court.

This case however recognizes a distinction, already adverted to, and which we think applicable to the case now under consideration. POWERS, J., in giving the opinion said :—" The case at bar is unlike *Patch* v. *Ins. Co.*, 44 Verm., 481. There the question arose upon the construction of a paid-up policy, issued in place of a former one surrendered, which contained an express stipulation that certain sums of interest should be paid in advance. The action was assumpsit on the paid-up policy, and no question was made whether the paid-up policy was in such form as the insured was entitled to. Such as it was he accepted it, and the action was upon it in the form it was issued and accepted."

It is manifest that our argument in some particulars has gone beyond the strict requirements of the present case, and has tended in some measure to show that the form of paid-up policy issued to the plaintiff and accepted by him was in accordance with the original policy; but in view of the adverse construction of the same kind of policy by the courts of New Hampshire and Vermont, and the want of unanimity among the members of this court upon this subject, we think it best to leave that part of the discussion an open question for future consideration should the matter again arise, and to restrict the present decision to the pre-

cise question stated at the opening of our discussion, whether the paid-up policy involved in this suit contains a provision whereby the failure to pay interest has accomplished the forfeiture of the policy.

In this opinion PARK, C. J., and PARDEE, J., concurred. CARPENTER and GRANGER, Js., dissented.