# Commonwealth Life Insurance Co. v. Stanley.

(Decided March 6, 1934.)

BATSON, CARY & WELCH and STEPHENS and STEELY for appellant.

POPE & UPTON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

A policy for $1,000 on the life of W. B. Stanley, issued by the appellant, became paid up on February 6, 1931. It is specified in the policy that the cash surrender and loan value at that time would be $370. On February 21, 1931, the insured borrowed that sum and executed a note payable August 6, 1931, with interest from maturity, and an assignment of the policy as collateral security. Payment of interest in advance on loans made on the policy was stipulated therein. Some time about August 6th the insured was notified that his interest was payable. Again on August 22d he was advised that it was due, but was subject to a credit for dividends amounting to $7.14, and that, if he would send a check for the balance of $15.06, he would be given a receipt therefor. There is an issue whether these notices were received. On November 9th, by registered letter, the insured was advised that the dividends had been applied to the interest, and it was thereby paid to December 2, 1931. He was further notified that, unless he paid the balance of interest on or before that date, his policy would lapse, the company would be relieved of further liability, and the note would be marked void and the policy canceled. He received this letter, but

214

ignored the advice and warning. The insured died about two months later, and payment of the insurance was resisted upon the ground that the policy had been canceled on December 2d by the application of the reserve value to the satisfaction of the loan against it. Upon the trial of this suit to recover the face of the policy, less the indebtedness, the court directed a verdict for the plaintiff, and the defendant appeals.

The mutual rights and powers of the parties are, of course, to be found in the contracts. The only provision in the policy pertaining to the lending of money upon it is that, under certain conditions as to its age and existence, the company would lend the insured, with the policy as collateral, the designated sum, the interest being payable in advance to the next anniversary of the policy. It is also provided:

> "If a loan is obtained upon this Policy, the Insured thereby elects to take the Cash Surrender Value in settlement thereof upon default in payment of future premiums."

The note merely states that it is secured by an assignment of the policy, identified by its number, and that "this loan is made from and out of the reserve on said policy." The first paragraph of the "Policy Loan Agreement and Policy Assignment," which was signed by the insured and beneficiary, identifies the loan and assigns the policy to secure the note and interest. The remainder of that instrument is as follows:

> "Said loan is made under and on the terms, conditions and provisions contained in said policy, and in the event said loan is paid by the application by the Company thereto of any Cash Surrender Value in the manner set forth in said policy, any excess of Cash Surrender Value remaining after said application, shall be paid to the insured in cash within thirty days after the grace period allowed on the premium has expired, said thirty days being stipulated between the parties as a reasonable opportunity offered the insured to apply for the reinstatement of his lapsed policy in accordance with the provisions thereof; and the insured hereby elects to accept any such payment in lieu of any paid up or extended insurance. In consideration of said Company waiving the deposit of said policy with it, the undersigned hereby agrees that its

rights shall in no manner whatever be prejudiced by such waiver."

We are not concerned with those cases wherein there was a stipulation such as that whenever the loan and accrued interest should equal the cash surrender value of the policy the insurance would be canceled in satisfaction of the debt (as was the contract in Northwestern Mutual Life Insurance Company v. Barker's Executrix, 241 Ky. 490, 44 S. W. [2d] 292, 294), or where it was agreed that the policy might be canceled upon non-payment of the loan by applying the cash surrender value. See annotation, 18 A. L. R. 1145. Closer to the present case are those in which the contract provided that, upon the failure to pay interest on a loan at a certain time, the policies would be canceled, which provision has been held void as being a penalty. St. Louis Mutual Life Insurance Company v. Grigsby, 10 Bush, 310; Northwestern Mutual Life Insurance Company v. Fort's Adm'r, 82 Ky. 269; and New York Life Insurance Company v. Curry & Bro., 115 Ky. 100, 72 S. W. 736, 24 Ky. Law Rep. 1930, 61 L. R. A. 268, 103 Am. St. Rep. 297. To the same effect are Holman v. Continental, etc., Insurance Company, 54 Conn. 195, 6 A. 405, 1 Am. St. Rep. 97; Cole v. Knickerbocker Life Insurance Company, 63 How. Prac. (N. Y.) 442; Eddy v. Phoenix Mutual Life Insurance Company, 65 N. H. 27, 18 A. 89, 23 Am. St. Rep. 17; Travelers' Insurance Company v. Lazenby, 16 Ala. App. 549, 80 So. 25, certiorari denied in 202 Ala. 207, 80 So. 29 (set out at length in the annotation in 18 A. L. R. at page 1149); Couch, Cyl. of Insurance Law, sec. 649; 37 C. J. 17.

There is nothing anywhere in this entire contract of lending and pledging in which it is stipulated or agreed, expressly or inferentially, that the company could convert the policy, or appropriate the pledgor's property in satisfaction of the debt upon his failure to pay either the principal or the interest. It is only provided that the insured would elect to take the cash surrender value in settlement of his debt upon default in the payment of "future premiums." There could be no future premiums after the policy had become fully paid up. So far as the contract of insurance was concerned, it had been fully executed by the insured. There is no such thing as a lapsed paid-up policy. Travelers' Insurance Company v. Lazenby, supra.

"Future premiums" are essentially different from

"annual interest," although there are a few foreign cases which treat provisions for payment of interest on notes given for the entire premium as equivalent to a premium; but those cases did not involve paid-up policies, and there were continuing obligations to pay premiums. The only case directly in point, so far as our research has gone, is Gardner v. Union Central Life Insurance Company (C. C.) 5 F. 430, 433. A paid-up policy for a term was issued in consideration of the surrender of a policy with another company, which had been taken over, and the agreements by the insured to pay annual interest on a loan during the continuance of the term. One of the conditions of the policy was that the premiums should be paid when due, and another was that, in case of violation of any of the conditions (including that one), the policy should become null and void. Citing our Grigsby Case, the United States court said:

> "It certainly could not be claimed that such interest should be treated as a premium to be paid upon the paid-up policy."

Continuing, it was written:

> "It would seem clear that the parties to this paid-up policy regarded this sum of $403 as a loan, and they made no provision for the forfeiture of the policy for the non-payment of the interest thereon; and it would be a strained construction to say that the interest provided for in the body of the policy was a premium, within the letter or spirit of the third condition, the non-payment of which would make a forfeiture of the policy which had been paid up. This construction works no injustice to the defendant, for its debt, with the interest, is a lien upon the policy; it must be deducted, and the plaintiff receives only the balance, which seems his equitable right. Brooklyn L. Ins. Co. v. Dutcher, 95 U. S. 269 [24 L. Ed. 410]."

In the absence of an agreement to set off the value of the policy, that is, the collateral, against the debt, we may look toward the law of pledges generally with the modification necessary to adapt it to the peculiar nature of a life insurance policy. As is said in Northwestern Mutual Life Insurance Company v. Barker's Executrix, supra:

"In this field of business an insurance company has no greater privileges or rights than banks and other money lending agencies. Emig's Adm'r v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L. R. A. [N. S.] 828. This is particularly true when the contingencies of a non-paid-up policy are absent. New York Life Ins. Co. v. Curry, 115 Ky. 100, 72 S. W. 736, 24 Ky. Law Rep. 1930, 61 L. R. A. 268, 103 Am. St. Rep. 297. The company in lending money on such a policy has the best and safest sort of investment. Its liability for the face of the policy is as certain as death and that certainty attaches to its security."

In Jones on Collateral Securities, sec. 589, the several remedies of a creditor and pledgee are given with this qualification:

"The remedy by sale, however, does not apply in case of pledges of negotiable paper and other choses in action which have no recognized market value unless a special power of sale be given."

In Mutual Life Insurance Company of Kentucky v. Twyman, 122 Ky. 513, 92 S. W. 335, 97 S. W. 391, 28 Ky. Law Rep. 1153, 30 Ky. Law Rep. 90, 121 Am. St. Rep. 471, the assignment of a paid-up policy to secure a loan stipulated that it was "assigned and surrendered to said company for cancellation in satisfaction of this note, and in settlement of the cash surrender value of said policy." After default in the payment of interest, the company calculated its cash surrender value and applied it on the debt and tendered the balance, $5.47, to the insured, which was refused. The company sued him and the beneficiary to compel its acceptance. The court expressed the opinion that, "notwithstanding his failure to pay the note at its maturity, appellant had not the arbitrary right to forfeit or cancel the policy at its own option." Of like effect in New York Life Insurance Company v. Curry & Bro., supra. In the Twyman Case it was declared that the company should, "like any other creditor holding a debt secured by lien, have resorted to a court of equity for the enforcement of its rights." It is further said that, because of the nature of a life insurance policy, it would not be ordered sold as other collateral or mortgaged property, but the court could decree its cancellation upon allowing to the insured its full cash surrender value less the debt. But

whatever the remedy might be under a contract of assignment and pledge such as we have involved here is not a matter of concern now. Certain it is that the company did not have the right on its ipse dixit to cancel its liability on the default in the payment of interest and that too which had not been earned. It had no right to do so under its contract. It had no right to do so under the law.

We may conclude the opinion with this excerpt from the Barker Case, supra:

> "The courts will not aid nor will they permit the enforcement of a penalty for the nonpayment of a debt or the exaction of an oppressive and unconscionable bargain with a debtor by reason of his necessitous circumstances. Such is the consistent view of the proper administration of justice. Principle and authority demand fair dealing by an insurance company with its policyholders as well as by a creditor with his debtor. The application of that rule, reinforced as it is by the conventional attitude of the courts towards forfeitures and the protection of impecunious debtors, makes it readily apparent that the attempt to cancel this policy under the conditions cannot be sustained. By reason of the peculiar relationship existing between an insurance company and its borrowing policyholder —especially where he had fully performed his part of the insurance contract by paying all the premiums required—where its action offends good conscience, it should be held to a strict accountability. We have no difficulty in reaching the conclusion that the act of the company in forfeiting the policy was unwarranted and unjustified."

The judgment is affirmed.

Whole court sitting.