## SMITH v. 49 & 56 QUARTZ MINING CO. et al.

WHERE, from an instrument transferring shares of stock as security for a note, and from other circumstances, the transaction is clearly a loan, a clause of foreclosure on non-payment, or a provision that the mortgagee may take the property for the debt, does not make the instrument any the less a mortgage.

The clause, in such instrument, "I hereby sell, transfer, and set over, - - - all my right, title, and interest, to the said - - - stock, provided I fail to pay - - - the above sum - - - on the day the same becomes due and payable," does not make it a conditional sale, there being no money given, or agreed to be given, for the stock, and no agreement to take it at any price, *at the time of contract.*

A mortgagee of stock, in such case, does not get an absolute title to the stock, by the mere default of payment of the mortgage debt.

Where stock is transferred to secure a debt, and is still in the hands of the transferee, and plaintiff avers that the stock is worth more than the debt, and that defendant has received, from dividends, more than enough to pay it, equity has jurisdiction to compel an account, prevent a transfer, and direct a retransfer and delivery of the stock.

As to whether the transfer of stock in this case was fraudulent as against creditors, stated.

APPEAL from the Fifteenth District.

The case will be understood from the opinion.   The Court below first granted an injunction restraining the company from paying dividends on the stock in controversy, to any one except plaintiff, and restraining defendants, Whiteman & Shellcross, from transferring the stock.

At the hearing, final decree was made that Shellcross reconvey the stock to plaintiff, and pay him four hundred and two dollars and fifty cents, the amount of dividends received, over and above the debt and interest, that the company make the transfer on their books, and pay plaintiff all dividends since service of the injunction, which was made perpetual.   Shellcross appeals.

*Thos. Sunderland,* for Appellant.

1. If the sale by the company was ratified by Smith, it became absolute, and vested the bill in Whiteman, and he could deal with it as his own absolute property.

2. If not ratified by him, the stock is now, and always has been, the property of Smith; the certificates of stock are his, and he has a complete remedy at law, both for his stock and dividends.

3. The transfer by Whiteman to Shellcross was absolute. (*Brown* v. *Bennett,* 8 Johns. 96.)

4. The sale by the company was permitted by Smith, for the purpose of defrauding his creditor, Keyte, and he cannot, therefore, ask a Court of Equity to decree the retransfer of stock.

*Robinson, Beatty & Heacock,* for Respondent.

Whenever property is given to secure the loan of money, Courts of Equity will treat the transaction as a loan and mortgage, whatever may have been the form of the conveyance, or the mode of delivering the property. (2 Story's Eq. Jurisp. Sec. 1018; 4 Kent, Marginal, 142.)

In this case the form of the instrument shows it to have been a mortgage, with an awkward attempt to express the proviso, that the party must redeem at maturity.

But if this agreement had been expressed in the clearest and most explicit terms, it would have been utterly void. No such agreement can deprive the mortgagor of the right of redemption. (2 Story's Eq. Jurisp. Sec. 1019; 4 Kent, Marginal, 143.) The alleged settlement was made by Whiteman, who, as Shellcross knew, had no real interest in the transaction at the time the settlement was made.

Another ground taken is, that Smith made this transaction to avoid a debt.

The rule is, if A conveys his property to B, to avoid the payment of a debt to C, B may keep the property, not because B is any more honest than A, but because a Court of Equity will not interfere to relieve A from the legal position in which he has voluntarily placed himself. The Court will not allow A to plead his own fraud. But if A has property worth one thousand dollars, and mortgages it to B for a pretended debt of five hundred

dollars, for the purpose of defeating C's claim, still A may re-deem, because in his bill he could simply say that he had mort-gaged his land for five hundred dollars, and bring in the money to redeem that mortgage. B could not say in his answer that this was a fraudulent mortgage, concocted by A and myself for the purpose of cheating C. In the latter case B would be just as much estopped from pleading his fraud as A was in the former from pleading his.

In this case, if there was any fraud at all in the original trans-fer of the stock, both Whiteman and Smith were guilty. White-man was the agent of Shellcross, and Shellcross knew everything that Whiteman had done in regard to the matter. In fact, White-man was the active agent in the whole transaction. Smith had no occasion to maintain his suit, in this case, to show a connec-tion with any fraudulent transaction at the inception of the mortgage. If there was any fraud at that time, it is lugged into the pleadings in this case by Shellcross; and Shellcross, by his agent, Whiteman, was the most active party in perpetrating the supposed fraud. It is against every principle of equity to allow him to plead and take advantage of his own fraud.

But a more charitable construction of this transaction is, that there is no fraud about it as to the original transfer of the stock. The device of selling, so as to put the mortgage in the place of assessments, was an act as beneficial to the attaching creditor as to Smith himself.

If the money had not been raised upon mortgage, and paid into the company, the shares would have been sacrificed to pay the assessments. There is no pretense that this transaction was concealed from the attaching creditor. He was benefited there-by, and we hear no complaint from him.

BALDWIN, J. delivered the opinion of the Court—COPE, J. con-curring.

On the 30th day of May, 1858, the plaintiff was the owner of two and a half shares of stock in this company. A certificate was issued upon each half share. On that day, the company levied an assessment upon the stock of one hundred and sixty dollars to each share, to be paid on the 15th June thereafter. The shares of the plaintiff were advertised for assessments

which he had failed to pay, and, on the 16th June, sold at public auction for six hundred and nine dollars, to one Wright. On the same day, White transferred the shares to W. Whiteman, one of the defendants, at that time one of the Directors and the President of the company. There was proof that Wright bought the stock for Whiteman, and with money furnished him by Whiteman. It is, also, in proof, that Whiteman, in this matter, was acting for one Shellcross, of Sacramento, who sent to Whiteman seven hundred dollars. The money seems to have been furnished by Shellcross, by an undertaking or arrangement with Smith, or for him, whose note was proposed to be taken for the amount. A paper was executed by Whiteman to Shellcross, as follows:

"$805.                    YANKEE HILL, July 17th, 1858.

Three months after date, (without grace,) I promise to pay to Wm. D. Shellcross or order, at the office of (A. K. Grim, Sacramento,) the sum of eight hundred and five dollars, value received; and to secure the payment of the said sum of eight hundred and five dollars, when due, I have transferred to the said Shellcross absolute two and one half shares of stock of the 49 & 56 Q. M. Co. Nos. 33, and 34, and 45, and the same to be transferred upon the books of said company; and for and in consideration of the above sum of eight hundred and five dollars, I hereby sell, transfer, and set over, to the said Shellcross, his heirs and assigns, all my right, title, and interest, to the said two and a half shares of stock in said company, provided I fail to pay to the said Shellcross the above sum of eight hundred and five dollars, on the day the same becomes due and payable.

Witness my hand and seal, this 17th day of July, A. D. 1858.

                    G. F. WHITEMAN.     [L. S.]

Witness, JOHN L. VIVEN."

Shellcross executed to Whiteman a certificate that such stock had been transferred on a promise to retransfer to Whiteman if the note was paid at maturity. The stock was on the books after the sale in the name of Whiteman, and Whiteman transferred to Shellcross. Afterward, Whiteman gave an order on Shellcross to deliver the certificate pledged to Mrs. Smith, on the payment of the money. Mrs. Smith, sometime afterwards, ten-

dered to Shellcross payment of the debt, which was refused. The bill charges, that the shares of the stock are greatly more than the debt; and that the defendant has received largely more than enough money to pay off the debt. It prays an account, retransfer and delivery of the stock, etc.

1. There is but little doubt as to the true character of this transaction. It evidently was a mere loan of money by Shellcross to Smith on this stock—though the process of affecting so simple a result seems to have been unnecessarily complicated. Leaving out all question of the validity of the company's sale of the stock—which appears to have been in some way defective— the arrangement, by putting the stock in the name of Whiteman, and his transfer of it, the proposed note of Smith, the accompanying letter, the certificate of Shellcross and the order of Whiteman, all point, with certainty, to the true nature of, and real parties to, the transaction. It was neither more nor less than an hypothecation of stock for the payment of a loan of money. No sale, judicial or other, of this stock was made by Shellcross. It still remains in his hands and stands in his name; and it is charged, and not denied, that the dividends received by him on it have been more than sufficient to pay the debt. There is no pretense for saying that this was a conditional sale, for no money was given, or agreed to be given, for the stock—no agreement to take it, either for the eight hundred dollars, or for any other sum, *at the time of contract.* The promissory note was retained; and the language of the instrument, evidencing the intention of the parties, is express, that this stock was intended to secure the payment of the debt. The transaction being a loan, a clause of foreclosure on non-payment, or a provision that the mortgagee might take the property for the debt, would not make the instrument less a mortgage. (4 Kent, 148; 8 Cal. 145; Id. 424.)

2. Nor is there any foundation for the argument of Appellant's counsel that there was a fair and full settlement between Whiteman and Shellcross. This alleged settlement was not on any new consideration, and not made until the proceeds of the stock had paid the debt. But the Court find, and we think rightly, that Shellcross knew the true relations of these parties, and that the stock was Smith's. Any settlement, therefore, especially such a

settlement, with Whiteman, would be wholly ineffectual to defeat the rights of Smith in the premises.

3. Considering the transaction as a mortgage of the stock, it is scarcely necessary to say that the mortgagee does not get an absolute title to the property by the mere default of payment of the mortgage debt.

4. The position taken by the Appellant, that the plaintiff here cannot recover in this action because the assignment or sale of stock was made to defraud the creditors of Smith, cannot be maintained. If Shellcross could set up any such defense, as applicable to such a case as this, we think that the facts do not warrant it, and they should be very clear to have this effect. The more charitable and more reasonable interpretation of the conduct of the parties is, that Smith found that he could not pay the assessments without getting a loan on the stock; and he could not do this without hypothecating the stock. If he failed to pay the assessments, the stock would be forfeited and valueless to his creditors or himself. It did not hurt the creditors to raise the money in this way, for the stock would be liable to his claim after the money loaned to pay the assessments had been paid. But even if fraudulent as to the creditors of Smith, who do not seem to be complaining here, it was good between the parties—as a note given for the purchase money of land fraudulently conveyed—and this bill is filed really to enforce the contract between Smith and Shellcross—Whiteman acting as agent of Smith, and being merely the conduit through which the title to the stock passed.

5. It is insisted that a Court of Equity has no jurisdiction; that a Court of Law could give all the proper relief. But this point is not well taken. Equity is the proper forum to decree an account, to prevent a transfer of the stock by Shellcross, and to direct a reconveyance; neither of which acts could a Court of Law accomplish.

Decree affirmed.