## DANIEL F. SEYMOUR *vs.* GEORGE M. IVES.

46 109
74 447

46 109
77 703

*A* had transferred to *B* certain shares of stock as collateral security for a note given him for a loan, with an agreement that, if the note was not paid when due, he might sell the stock at either public or private sale, and apply the proceeds in payment of the note. The note was not paid, and *B*, who was acting for himself and *C*, thereupon agreed with *C* that they would themselves take the stock at $60 per share, which was its market value; but nothing further was done in the matter. Afterwards *A*, who had become insolvent and who was largely indebted to *D*, agreed with *D* that the latter might take the stock at $75 per share, and after paying the note held by *B*, apply the proceeds upon his claim. *D* thereupon tendered to *B* the amount of the note and interest and demanded the stock, which *B* refused to surrender, stating that it had been taken by himself and *C*. *B* afterwards made demand upon *A* for payment of the note, and on his failing to pay sold the stock and applied the proceeds upon the note. The highest market price of the stock during the period covered by these transactions was $60 per share. In trover brought by *A* against *B* for the value of the stock, it was held—

1    That the agreement of *B* and *C*, between themselves, to take the stock, not being carried out by any further act, did not constitute a purchase of it by them.

2.  That the arrangement between *A* and *D* was only an agreement to sell the stock to *D*, and that the title remained in *A*, and that he could therefore maintain the suit.

3.  That the agreement of *D* to allow $75 per share for the stock did not make that price the rule of damages, $60 per share being the highest market value.

The damage beyond the $60 per share did not result naturally and proximately from the defendant's conversion of the stock, and could not have been implied from it.  It was therefore special damage, which, to be recoverable, must have been specially alleged.

But the courts of this state have never admitted such special damage as this in trover.

The settled rule of damages in trover is the market value of the property converted; and the only exceptions allowed by our courts have been in the direction of a reduction of the damages; as where the plaintiff has afterwards received the benefit of the property or of its proceeds, in whole or in part.

The English courts have allowed special damage growing out of some contract for the sale of the property converted which the plaintiff has been rendered unable to perform, but they require in such cases that the plaintiff should not have been able to procure the articles in the market.

The courts of this country are not agreed as to whether the market value of the property converted is to be the value at the time of the conversion or the highest value at any time between the conversion and the trial; but the decided weight of authority is against the rule allowing the highest intermediate value.

TROVER for certain shares of stock; brought to the Superior Court in Hartford County, and tried to the court on the general issue before *Beardsley, J.*  Judgment for the plaintiff, and motion for a new trial by both plaintiff and defendant.  The case is fully stated in the opinion.

*C. E. Perkins,* for the plaintiff.

*C. E. Fellowes,* for the defendant.

LOOMIS, J.  This is an action of trover for the conversion of eighty-five shares of the stock of the Hartford Life & Annuity Company, which was held by the defendant as collateral security for the payment of the plaintiff's note for $4,900, dated September 7th, 1875, payable to the defendant six months after date.

Annexed to the note was full authority from the plaintiff, in case of non-payment, to sell the stock at public or private sale, and apply the proceeds to the payment of the note. Prior to the giving of this note and security, the defendant

with two other persons, Griswold and Whitman, entered into an agreement for the purchase and sale of the stock of said company on their joint account. The account was to be kept in the name of the defendant, as trustee, who was to hold the stock so purchased as security for advances made by him. In pursuance of this arrangement the loan was made to the plaintiff and his stock taken as security in the manner stated. The note was not paid at maturity, but no demand for its payment was made until September, 1876. Griswold died in 1875, before the note matured, and Whitman was one of his executors. After the maturity of the note it was agreed between the defendant and Whitman, acting for himself and also as executor of Griswold, that they would take the stock themselves at sixty dollars per share and apply it on the note; but nothing further was ever done under the agreement.

In March, 1876, the plaintiff was indebted to said company in a large amount, for which the company had poor security, and the company distrusted his pecuniary responsibility and were anxious to obtain the benefit of any margin of value in the stock above the debt due the defendant. Accordingly Crosby, the vice-president of the company, was authorized by the directors to arrange with the plaintiff so that the company could pay the amount of the note and interest due the defendant and take the stock held by him, and, if it was necessary, he was authorized to allow the plaintiff seventy-five dollars per share for his stock, although the market value did not exceed sixty dollars. The arrangement so authorized was made with the plaintiff, and the defendant, being a director of the company, had knowledge of it. The plaintiff gave a writing to the company authorizing Crosby to pay the defendant's debt in full, and directing the defendant, upon such payment, to transfer the stock to him, as trustee for the company.

Afterwards Crosby made tender to the defendant of the amount due him, in behalf of the plaintiff under said authority, and also in behalf of the company under the agreement, and requested a transfer of the stock, which the defendant refused, giving as a reason the agreement with

Whitman to take the stock themselves.   Afterwards, in September, 1876, the defendant demanded payment of the note, which was refused by the plaintiff, and on the 20th day of November following, sold the stock and applied the avails toward the payment of the note.

The court upon the facts as found, of which the above is an abridged statement, rendered judgment for the plaintiff to recover the market value of the stock at the time of the conversion, with dividends and interest added, after deducting therefrom the amount of the note and the interest.   And both parties, feeling aggrieved, bring the case to this court by motions for a new trial.

The defendant's motion is based on two grounds:—1st. That his agreement with Whitman that they would take the stock themselves, and apply it on the note, justified his refusal to give it up on demand of Crosby.   2d. That the legal effect of the arrangement between the plaintiff and the company vested the title to the stock in the latter, so that the plaintiff could not maintain the suit, but it should have been brought by the company.

We do not consider the defendant entitled to a new trial on either of these grounds.   The agreement with Whitman to take the stock was never consummated; nothing whatever was done under it.   It was not a sale of the stock pursuant to the authority annexed to the note.   The title to the stock still remained in the plaintiff, and the note to the defendant was not paid by the transaction.

Neither did the arrangement between the plaintiff and the company amount to a sale; it was a mere contract for a sale in the future, by which Crosby was authorized, as agent for the plaintiff, to pay the amount due the defendant, and upon such payment to request a transfer of the stock to the company.   But until the arrangement was consummated the company could get no title.   The defendant still held the title, and so he must have understood it, for, after this, he demanded payment of the plaintiff and then sold the stock and applied the avails on his note.

The plaintiff's motion is based on the fact that the court

allowed only the market value of the stock at the time of conversion, with interest, according to the general rule in trover, when the plaintiff should have been allowed the benefit of his special contract with the company, by which the stock was to be applied as security for, or in payment of his debts, at the rate of seventy-five dollars per share, although the highest market value was only sixty dollars. The damage claimed did not result naturally and proximately from the defendant's conversion of the stock, and could not have been implied from the act complained of. It was therefore special damage, which, to be admissible, required an appropriate allegation in the declaration.

It is said by the plaintiff that the evidence does not appear to have been objected to by the defendant upon the trial. This would be a waiver of the objection, if it appeared that the evidence relied upon was offered by the plaintiff for the purpose of proving special damage. But it would seem from the finding that the evidence upon which the claim for special damage is based came in as a necessary part of the facts of the case, upon which the defendant relied as one ground of his defence upon the merits. We think therefore that the defendant ought not to be held to any waiver.

But it is not necessary to put the case on this technical ground, as, upon our view of the merits of the question, the result will be the same. The rule of damages in trover is strictly a matter of law, and is, in general, the value of the property at the time of conversion, with interest. There are qualifications or exceptions to this rule; but in this state the only exceptions hitherto expressly recognized refer to matters in mitigation of the damages, as where the plaintiff after the conversion has had the benefit of the property or its avails in whole or in part. Such were the cases of *Baldwin* v. *Porter*, 12 Conn., 473, *Curtis* v. *Ward*, 20 Conn., 204, *Cook* v. *Loomis*, 26 Conn., 483, and *Lazarus* v. *Ely*, 45 Conn., 504.

The only attempt hitherto made in this state to obtain greater damages than the general rule allows, was in *Hurd* v. *Hubbell*, 26 Conn., 389, where this court granted a new trial because the court below, in a case where it appeared

Vol. xlvi.—15

that the defendant had fraudulently conspired with another person to deprive the plaintiff of his property, permitted the jury to add something on account of the trouble and expense of the litigation to which the plaintiff was compelled to resort by reason of the defendant's wrongful act. ELLSWORTH, J., in giving the opinion said:—"We have always understood that the rule of damages in this kind of action is the value of the property at the time of the conversion, and interest. It has been so from the first in our courts, and in the English courts with a slight qualification in the case of sales of chattels where the price is paid in advance and in that of contracts for the delivery of stock. The rule is the same throughout this country."

The above statement as to the English courts now requires some modification. We understand that the plaintiff there is permitted to recover any special damage which he may allege and be able to prove as the result of the wrongful act of the defendant. *Bodley* v. *Reynolds*, 8 Ad. & El., N. S., 779; *Davis* v. *Oswell*, 7 Car. & P., 804. But the remark relative to the courts of the United States is still substantially true. Where the value of the property is fixed, the rule, we believe, is the same in all the states; but where this standard of a fixed value does not exist there is a difference as to the time when the value is to be taken. In New York, where the value is fluctuating, there are cases that give the plaintiff the highest value at any intermediate time between the conversion and the trial, provided the suit is brought in a reasonable time; and the same rule obtains in Wisconsin. But the decided weight of authority is against the rule allowing the highest intermediate value. It is rejected in Massachusetts, New Hampshire, Maine, Michigan, Illinois, Kentucky, Louisiana, Mississippi, and some other states. We refer to these authorities merely to show that, by the most liberal rule in any of the states, the plaintiff could not obtain the damages claimed by him, because it is conceded that the highest market price of the stock at any time did not exceed sixty dollars per share, the amount allowed by the court. The purposes of the present case do not require us to decide which of the rules referred to we will adopt, and we are not

prepared to say that a case may not arise in which the damages allowed may exceed the value at the time of conversion, provided they result proximatety from the conversion, and could be allowed on the strict principle of just compensation for the property taken. All that we now decide is that, as the defendant at any time could have obtained the stock in the market at sixty dollars per share, he is not entitled to the extraordinary price named in his special agreement with the company. That arrangement was most extraordinary. It was entered into after the maturity of the note, when the right of the defendant to sell the stock had become fixed; and the sole inducement for the company to make it was the embarrassed pecuniary condition of the plaintiff, and the hope to get something out of the margin on the stock to apply on their poorly secured claim. The agreement to call the stock seventy-five dollars per share, when its highest price was only sixty dollars, making a difference in the aggregate on the eighty-five shares of twelve hundred and seventy-five dollars, must have been understood between the parties as equivalent to a discount on the claim of the company. If we should sanction such a rule of damages it is easy to see that it would be made the instrument of gross injustice.

If a contract to re-sell the property at an advance upon the market price is ever to be allowed to increase the damages, it ought surely to be under different circumstances from those of the present case, and it ought at the same time to be shown that the article was not then procurable in the market. This would seem to be the rule even in England, where trover is founded on a special contract. In the case of *France* v. *Gaudet*, L. Reps., 6 Queen's Bench, 199, cited by the plaintiff, where the plaintiff bought champagne at fourteen shillings and had contracted to sell it again at twenty-four shillings, and he was allowed the latter sum in damages, the fact that the champagne was not then procurable in the market seems to have had a controlling effect.

A new trial is not advised in favor of either party.

In this opinion PARK, C. J., and PARDEE, J., concurred. CARPENTER, J., did not sit.