CHARLES I. RUANE, Administrator of the Estate of JAMES RUANE, Deceased, Respondent, v. THE MANHATTAN LIFE INSURANCE COMPANY, A Corporation, Appellant.

Springfield Court of Appeals, June 26, 1916.

1. **INSURANCE: Contracts of: Non-Forfeiture Statutes: Not Applicable to Policies Issued Previously to its passage.** The Non-forfeiture laws providing for extended and paid-up insurance. (Sec. 7987, R. S. 1909), cannot effect or change the terms of an insurance policy issued previously to the passage of such law.

2. ———: **Life Policy: Equitable Value: Reserve Fund.** The equitable value of a life insurance policy constitutes its reserve fund.

3. ———: ———: **Loan on: Construction.** A provision in a loan agreement between an insurer and the insured was that in case of death the amount due on the loan obligation should be deducted from the amount of the policy. This provision meant that if the assured died while the policy was in force and the indebtedness was outstanding and unpaid, such indebtedness should be deducted from the amount of the policy.

4. ———: ———: **Extended Insurance: Deduction of Loan:.** Statutes. In the matter of a loan on a life insurance policy the insurer applied so much of the statute, then in force, but not binding on it, as authorized one-fourth of reserve. It was not bound to apply the other part of the statute forbidding deduction of a loan from reserve before three-fourths of reserve was applied to purchase extended insurance.

5. ———: ———: **Loan on: Reserve Value: Agreement.** Under a loan agreement on an insurance policy a provision that upon default the pledge of the policy should be foreclosed by satisfying

Ruane v. Insurance Co.

the indebtedness out of its reserve or surrender value and the balance, if any, paid to the assured in cash or applied to the purchase of extended or paid-up insurance is a reasonable and practicable method of terminating the contract and is not inconsistent with sound policy or violative of the substantial rights of the pledgor.

6. ———: ———: **Duty of Insurer to Assured.** The insurer is *held* as a trustee to fairly and properly treat the assured.

Appeal from Wayne County Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED.

*Jones, Hocker, Sullivan & Angert* and *James C. Jones* for appellant.

*Charles P. Damron* and *Anderson, Gilbert & Levi* for respondent.

FARRINGTON, J.—Action on an insurance policy, filed nine years, nine months and fifteen days after the death of the assured. Judgment for plaintiff for the face of the policy, $2000—less the amount of a loan, $435, with interest thereon to October 9, 1904, making a total due on the loan of $582.43, leaving a difference in favor of plaintiff of $1417.57 together with interest on said difference amounting to $921.43, making a total judgment for $2339. Defendant appeals.

On February 18, 1878, defendant, a New York corporation, authorized to do business in Missouri, issued to James Ruane in this State an ordinary life policy for $2000 payable to his estate. The semiannual premiums of $32.56 were paid on the fifteenth day of each February and August up to and including the one due on August 15, 1898. On August 13, 1898, the assured executed a promissory note payable to the defendant company for $435, due February 15, 1899, and assigned his policy to the company as collateral security for the payment of said note. The loan was never repaid, nor did the assured pay the semiannual premium due February 15, 1899, or any premium thereafter. He died

October 9, 1904, and the plaintiff is the administrator of his estate. The administrator filed this suit on July 24, 1914, the petition being in two counts. In the first count it is alleged that the assured had complied with all the terms of the policy and judgment is prayed for the full amount of the policy and interest. In the second count it is alleged that the note was executed and the policy assigned as collateral, that by the terms of the note it was provided that in case of the death of the assured the amount due under the note was to be deducted from the amount of the policy, and judgment is prayed for the full amount of the policy and interest, less the outstanding loan and interest.

Defendant's answer to the first count admits that it denied liability on the policy and refused to pay anything on account thereof, and pleads the provision of the policy to the effect that it is issued in consideration of the first semiannual premium and the payment on the fifteenth of every August and February thereafter of a like sum; and this further provision of the policy: "1st. That this policy shall not take effect until the first premium hereinbefore specified shall have been paid in cash during the lifetime of the person whose life is hereby insured; and that if any subsequent premium on this policy shall not be paid in cash on or before the day when due, then this policy shall cease and determine." Defendant alleges that no premiums were paid after August 15, 1898, so that the insurance terminated and lapsed and the policy ceased and determined. In the answer to the second count of the petition, these things are reiterated, the execution of the note and the assignment of the policy as collateral are admitted, and it is alleged that the note expressly provides as follows: "It is understood and agreed that if the principal amount of the loan above specified, or if any premium or interest, due according to the terms of this obligation or said policy, shall not be paid when due, said policy shall be forfeited and the said company is hereby expressly released from any liability, claim or demand upon or by reason of the said policy." It is then averred that the note was never paid, so that

by its terms, as well as by the terms of the policy, the insurance terminated and lapsed and the policy ceased and determined.

The reply was a general denial of each count of the answer.

The pleadings serve as a statement of the facts as far as they go, and it is unnecessary to copy those portions of the agreed statement of facts on which the case was tried which show the same things.

The policy contained this provision: "7th. That in every case where this policy shall cease and determine, or become null and void, all previous payments made thereon shall be forfeited to the said Company; excepting that in case of forfeiture after three or more years' premiums have been paid hereon, the Company will purchase the policy and pay therefor its equitable value, provided the policy be duly surrendered to the Company on or before the day of the lapsing of the same; which equitable value shall be determined by the Company."

There is no provision in the policy giving the assured the right to paid-up or extended insurance upon the lapse of the policy for the nonpayment of premiums, the only right given him in case of nonpayment of premiums being that last above quoted.

The nonforfeiture laws of this State, providing for extended and paid-up insurance, had not been enacted when this policy was issued, and respondent concedes that Missouri could not pass a law changing the terms of a policy previously issued, and that section 7897, Revised Statutes 1899, by its terms, did not apply to such policies.

As this policy had been in force more than three years, the company proceeded as follows: Upon the lapse of the policy for the nonpayment of the premium due February 15, 1899, it calculated the then reserve on the policy (computed on the Actuaries' or Combined Experience Table of Mortality with 4 per cent. interest per annum), which amounted to the sum of $745.08; within thirty days after February 15, 1899, without any direction from or notice to the assured, it

deducted from three-fourths of said reserve, which was $558.81, the amount due on the loan, $435, and applied the balance, $123.81, as a net single premium to the purchase of extended insurance, which last-mentioned amount was sufficient to continue said policy in force for two years and no longer, and this period expired February 15, 1901. It is agreed that if the company had applied the entire three-fourths of the reserve on the policy without deducting therefrom the amount of the loan to the purchase of extended insurance, it would have continued the policy in force for over nine years; also, that if the company had applied to the purchase of extended insurance the entire reserve of the policy, it would have continued the policy in force for over twelve years; and that if the company had applied to the purchase of extended insurance, $310.08, the difference between the amount of the loan and the full reserve of the policy, it would have continued in force for four years and eleven months from February 15, 1899, or to January 15, 1904, whereas Ruane died October 9, 1904.

It is pointed out by appellant that the only monetary value which a policy can have at any time prior to its maturity is its reserve, and that if the reserve is taken as the equitable value of this policy, then the assured received from the company the equitable value by way of extended insurance; that, if it be contended that the equitable value means the full reserve on the policy at the date of its lapse, and that the company should have applied the full reserve, computed as hereinbefore stated, less the outstanding indebtedness, to the purchase of extended insurance, the answer is (1) that this equitable value, under the express provisions of the policy, is to be determined by the company itself, and that the company was justified in treating three-fourths of the reserve as the equitable value of the policy, particularly when three-fourths of such reserve is treated by the nonforfeiture statutes of Missouri and other States having nonforfeiture laws as the amount or value which the company shall allow the assured in ascertaining the paid-up or extended insur-

ance that shall be allowed in case of lapse, the insurer being permitted to retain the remaining one-fourth of this reserve to cover the expense incident to the carrying of the risk from the time of the lapse of the policy to the expiration of the period of extended insurance, which expense would have been defrayed out of the gross premiums still due under the policy had not the assured permitted the same to lapse; and (2) that even if the full reserve, computed as aforesaid, less the outstanding indebtedness, had been applied to the purchase of extended insurance at the time of lapse, the balance would have been insufficient to extend the policy from the date of its lapse to the date of the assured's death, because such extended insurance would have continued the policy in force only to January 15, 1904.

The equitable value of a life insurance policy constitutes its reserve fund. [People of New York v. Security Life Ins. and Annuity Co., 78 N. Y. 114; New York Life Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789.]

Appellant claims that in allowing *any* extended insurance it did so voluntarily, and that in thus giving the assured a right or benefit it could do so by any standard of measurement it chose, and the fact that it measured the extent of the benefit it would allow by the same standard of measurement then fixed by the Missouri statute, did not impose upon it any of the conditions or provisions of the Missouri statute; that therefore it could allow the assured three-fourths of the reserve toward the purchase of extended insurance, which is the same standard of measurement provided by the Missouri statute, but that, as it was not bound by the statute, it would deduct the indebtedness from this reserve before buying extended insurance although it could not have deducted the indebtedness if bound by the statute in force at that time which permitted the deduction of only that part of the outstanding indebtedness on the policy at the time of the lapse which had been applied to the payment of *past premiums on the policy*. It may be observed that this has been changed. [Sec. 6946, R. S. 1909.]

Respondent seems to stress the provision of the loan agreement that ''In case of the death of J. Ruane, insured in policy No. 42871, the amount due on this obligation is to be deducted from the amount of said policy.'' Obviously, this provision means that if the assured dies while the policy is in force and the indebtedness is outstanding and unpaid, such indebtedness shall be deducted from the amount payable under the policy. Any other construction would not only be contrary to the provision of the policy that the same shall cease and determine upon the nonpayment of any premium due thereunder, but would also be contrary to the provision of the loan agreement that if the loan or any indebtedness or any premium on the policy is not paid when due the policy shall cease and determine and the company shall be released from all liability thereunder.

Respondent points out that the defendant applied so much of the Missouri statute then in force as authorized the deduction of one-fourth of the serve, thereby enabling it to make a profit of $186.27 for a six months' loan of $435, but refused to apply the other portion of the statute which forbade the deduction of this character of loan from the reserve before three-fourths of the reserve was applied to the purchase of extended insurance; and the trial court manifestly took the view that since the company in its letter dated April 13, 1905, stated that upon the lapse of the policy for the nonpayment of premiums it applied three-fourths of the reserve, computed in accordance with the provisions of the nonforfeiture statute of Missouri, it therefore intended to comply with that statute and should have complied with it entirely instead of only in part.

To this we cannot agree. Respondent, in short, asks this court to hold that the company is liable for the full amount of the policy because it arrived at the equitable value of the policy by the same standard of measurement provided by the Missouri nonforfeiture statute, although it is conceded that that statute did not control the policy in suit, and although the loan agree-

ment provides that the outstanding indebtedness thereunder shall be deductible from the equitable value of the policy, and although under the policy the company was not required to grant the assured any extended insurance whatever upon its lapse.

As a matter of fact there is no showing that when the calculation of the reserve was made by the company within thirty days from February 15, 1899, the company had in view the Missouri nonforfeiture statute. It was in a letter written by defendant's actuary over six months after the assured's death and seven years after the lapse of the policy that the statement occurred to the effect that the reserve on this policy was arrived at in accordance with the Missouri nonforfeiture statute; this letter was written in 1905 at which time the nonforfeiture statute had been changed and provided that *any* outstanding indebtedness, whether given on account of past premiums or not, could be deducted from the reserve; there is no statement in the letter that the company had attempted to calculate the reserve in accordance with the provisions of the statute as it existed in 1899. We hold that the parties were governed by their contract made years before this letter was written.

Quotations from the policy in this opinion show that it contained provisions for forfeiture in case the stipulated premiums were not paid, with the benefit, however, that after three premiums have been paid the company will give the assured the equitable value of the policy, which equitable value it would determine, upon the nonpayment of any subsequent premium when due, provided the policy is surrendered. The assured did not ask for or demand the equitable value of the policy upon its lapse according to the plain provisions of the contract, nor does the plaintiff in this action sue for the equitable value of the policy at the time of its lapse. Now when the loan of $435 was made in August, 1898, the parties agreed in writing that if it was not repaid, "or if any premium or interest, due according to the terms of this obligation, or said policy, shall not be paid when due, said policy shall be for-

feited and the company is hereby expressly released from any liability, claim or demand upon or by reason of, said policy, or by reason of the law of any State with reference to cash surrender value or paid-up insurance, except that this policy may, within two months after such forfeiture, be released to the company for such sum as it may be the custom of the company at that time to pay for the cash purchase of similar policies, less the amount due on this obligation." Thus did the parties contract, and we know of no rule preventing such a stipulation in contracts of this kind. The assured failed to pay the premiums due on the policy and it therefore ceased and determined. However, three years' premiums having been paid on the policy, the company had promised to purchase the policy and pay therefor its equitable value which it would determine provided the policy were surrendered to it on or before the day of lapsing. The assured, although presumed to know his rights under the contract, did not ask or demand anything. The company determined the equitable value of the policy, deducted therefrom the amount owing on the loan, and applied the balance to the purchase of extended insurance. This deduction was entirely proper under the terms of the contract. The balance was demandable by the assured at any time within two months. It is true, the company did not give him notice, but the answer is that the plaintiff is not claiming this balance, asking instead the full face of the policy less the loan. In this connection we quote the following language from appellant's supplemental reply brief: "This suit is not, as it might be, for that balance. His right to a judgment for that balance is not involved in this case. We may have to meet that demand in some other action, but not in this action."

The courts are uniformly upholding provisions in loan agreements similar to the one involved in the case at bar, that upon default the pledge of the policy should be foreclosed by satisfying the indebtedness out of its reserve or surrender value and the balance, if any, paid to the assured in cash or applied to the purchase of extended or paid-up insurance, and that this is "a

reasonable and practicable method of bringing the contract to a final determination'' and ''is not inconsistent with sound public policy or violative of the substantial rights of the pledgor.'' [Palmer v. Mutual Life Ins. Co. (Minn.), 130 N. W. 250, 253; Palmer v. Mutual Life Ins. Co., 77 N. Y. Supp. 869; Sherman v. Mutual Life Ins. Co. (Wash.), 102 Pac. 419; Eagle v. New York Life Ins. Co. (Ind. App.), 91 N. E. 814; Hartford Life Ins. Co· et al. v. Benson (Tex. Civ. App.), decided March 22, 1916, —— S W. ——, and cases therein cited.] The court in the case last referred to, speaking of the reasonableness of such contracts, called attention to the fact that there can be no general market for life insurance policies such as exists for stocks, bonds and other obligations to pay money resulting from the fact that no one except relatives and creditors can become beneficiaries in life insurance policies, so that if a pledged policy were offered for sale a vast majority of the public would be prohibited from purchasing and those eligible to purchase would be so few that practically no market for such property would exist.

The insurer is held as a trustee to fairly and properly treat the assured. [Tennent v. Union Central Life Ins. Co., 133 Mo. App. 345, 112 S. W. 754.] In that case, the court found that the ultimate result of the sale, which was in fact private but was to be public, showed that the company had not faithfully performed that trust, and it was this unfaithfulness that distinguishes that case from the one at bar where the company merely obtained the amount owing to it after allowing itself the customary (which happened to be the statutory) cancellation charge.

We have examined the cases cited by respondent both in the brief and at the oral argument and find that they are clearly distinguishable from our case along the lines pointed out in appellant's supplemental reply brief.

The judgment was for the wrong party and is accordingly reversed. *Robertson, P. J.,* and *Sturgis, J.,* concur.