(80 South. 25)

## TRAVELERS' INS. CO. v. LAZENBY.

### (3 Div. 277.)

(Court of Appeals of Alabama. April 2, 1918.)

1. INSURANCE ☞349(1)—FORFEITURE ON NONPAYMENT OF PREMIUMS—VALIDITY OF AGREEMENTS.

Agreements for the forfeiture of an insurance policy for nonpayment of premiums are valid and enforceable by the insurer.

2. INSURANCE ☞179½—LOANS—DEPOSIT OF INSURANCE POLICY—RIGHTS OF PARTIES—"PLEDGE."

An agreement under which an insured deposited a "paid-up policy" with the insurer as security for a loan *held* to make the deposit a "pledge" to which title remained in the pledgor with right in the pledgee in case of default to sell but not confiscate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pledge.]

3. PLEDGES ☞54 — VALIDITY OF AGREEMENTS — DIVESTITURE OF TITLE.

Where a pledge agreement provides that upon debtor's default title shall become absolute in the pledgee, it is void.

4. INSURANCE ☞179½—LOANS—DEPOSIT OF POLICY—RIGHTS OF PARTIES.

A paid-up insurance policy, deposited by the insured with the insurer, under an agreement for forfeiture or payment of excess insurance in case of a default, *held* a pledge, which could not be canceled, except by foreclosure.

5. INSURANCE ☞401 — CANCELLATION OF POLICY — "LAPSE."

That a paid-up insurance policy is transferred by contract, so that in case of nonpayment of a loan for which the policy is security title may pass, with a right in the pledgee to become a purchaser and to cancel the policy, and the policy is canceled thereunder, does not constitute a lapse.

6. INSURANCE ☞179½—LOANS—RIGHTS OF PARTIES—CANCELLATION OF POLICY.

An insurance company, which loans money on its own paid-up policy as security, is in the same position as other lenders, or as lenders on other security, and cannot cancel the insurance or avoid the policy, in the absence of acquisition of title thereto, except by proceedings necessary in the case of other lenders.

Appeal from Circuit Court, Butler County; A. E. Gamble, Judge.

Action by George S. Lazenby against the Travelers' Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed, and rehearing denied.

Certiorari denied by Supreme Court, 80 South. 29.

Rushton, Williams & Crenshaw, of Montgomery, for appellant. Powell & Hamilton, of Greenville, for appellee.

SAMFORD, J. It must be understood at the outset that this opinion deals with a policy of insurance upon which the insured has paid all the premiums and complied with all the conditions of the policy, thereby becoming fully executed on his part, and that nothing remained to be done on the part of the company, except to pay to the beneficiary a sum certain, upon the death of the insured, coupled with the obligation to increase the cash value of the policy at each succeeding anniversary thereof.

In this case, the insured, on March 26, 1900, obtained from the defendant a life policy, which, in consideration of the payment of 15 full annual premiums of $25 each, insured the life of the insured for the term of his life, in the sum of $1,000, the policy carrying other conditions and options not necessary here to mention, except that upon the payment of the 15 full annual premiums the policy became paid up. Each of the premiums were paid when due, and, all of them having been paid, the contract became a "paid-up policy" for $1,000, payable on the death of the insured, and was a valuable security, such as any other obligation calling for certain payment by a solvent institution; the title being in the insured, subject to the rights of the beneficiary. With the consent of the beneficiary, it could be sold outright, assigned, or pledged as security for debt. With the policy in this condition, the insured borrowed from the defendant on the 24th day of April, 1914, $298 to be due March 26, 1915, and deposited with the defendant the policy as a pledge to secure the repayment of the principal; the interest having been paid in advance. The pledge agreement was in writing, signed by all the parties in interest, and among other things contained the following:

"That, if default shall be made in the payment of the principal of this loan, or of the interest thereon, or of any premium on the contract of insurance pledged herewith, for thirty-one (31) days after such principal, interest or premium, respectively, shall become payable, then:

"(a) If the contract shall so provide, the amount of the insurance, less the indebtedness of the party of the second part for principal, interest or premium, or any of them, as the case may be, will be automatically continued for the term that the excess of the cash value, over such indebtedness, will purchase at the attained age of the insured at the single premium rate and according to the American table of experience of mortality, at the rate of three and one-half per cent. (3½%) per annum, or

"(b) If the contract shall not contain a provision as set forth in clause (a), the company shall pay to the party of the second part, upon execution and delivery of a surrender deed upon the company's form, the excess, if any, of the cash value of the contract pledged (over such indebtedness), and upon any such default the provisions in such contract of insurance for the payment of the principal sum at death or for extended term and paid-up insurance values shall be null and void."

No notice of the due date of the loan was sent to the insured.

There was a failure to repay the loan when due, and a failure to pay the interest in advance for another term of one year, and the matter rested here until May 5, 1915, when the secretary of the defendant company wrote insured as follows:

"We regret to note nonpayment of interest under your loan due March 26, 1915, and as there was no excess of the cash value of the contract pledged over such indebtedness, the provisions of your contract for the payment of the principal sum at death or for extended term and paid up insurance have, in accordance with the terms of your loan deed, been null and void since date

of such default. Upon evidence of insurability acceptable to the company and payment of the amount required therefor, we shall be glad to restore your insurance, and full advice as to the detailed steps in this respect will be given you by our representatives."

On May 4, 1915, the defendant's agents at Montgomery wrote a letter to plaintiff in which they said: "It will be necessary that the inclosed application for reinstatement be executed and approved by the company before the interest can be accepted." Subsequent to that time, the application was signed and returned to the company by the plaintiff. On May 14th, defendant's agents notified plaintiff that the policy had been reinstated, and called on plaintiff for the amount due, to wit, $14.99, which amount was never paid. There were other letters from defendant's agents, endeavoring to induce insured to pay the $14.99; but under our view of the law it will not be necessary to set them out, further than may appear by allusion thereto in the course of this opinion. No demand was ever made for the repayment of the principal of the loan, nor was there execution and delivery of a surrender deed to the policy by the insured; but defendant continued in correspondence in an effort to collect the interest. It was also admitted by the defendant, and the policy shows, that at the next anniversary of the policy its guaranteed surrender value would be $307. With the negotiations in this condition the insured died and due proof was made of his death.

There are three assignments of error, which may be considered in (2) and (3), to wit: (2) The court erred in rendering judgment for the plaintiff. (3) The court erred in not rendering judgment for the defendant.

As we view it, the whole question in this case turns upon a proper consideration of paragraph (b) contained in the loan contract under date of April 20, 1914. If the forfeiture clause in the loan contract is valid it must be enforced according to its terms, and if enforced according to its terms under the facts in this case, the contract of insurance indemnity was void and at an end, after the lapse of 31 days from the due date of the loan, not because the policy had lapsed—policies like this cannot lapse—but because of the forfeiture provided for in the loan contract. If this is so, there was no contract of indemnity insurance at the time of the letter of May 5, 1915, written by defendant's superintendent. According to the terms of paragraph (b), the contract of insurance for the payment of the principal sum at death was nullified. It is not contended that defendant did anything while the contract was yet alive that even looked like an intention to waive any of the terms of the forfeiture clause. That being the case, the letter of May 5th was nothing more than a proposition, with a condition attached; i. e., to restore (revive, reinstate) the insurance contract theretofore existing, upon the furnishing by the insured of evidence of insurability acceptable to the company and by the payment by the insured of the past-due interest on the loan, to wit, $14.99. The agent at Montgomery notified the insured on May 4th that it would be necessary to sign an application for reinstatement before the $14.99 could be accepted. The application was signed and sent in and accepted, and insured was notified that "company has reinstated your policy." and a call was then made for payment. Under the proposition made, the payment could not be made until the application had been accepted. The insured did not pay, nor did he become obligated to pay, and therefore the contract of reinstatement was never completed, nor was anything said or done by the company that prevented the payment or misled the insured to his hurt. On the contrary, the company was constantly trying to get the insured to complete the contract. Sov. Camp W. O. W. v. Jones, 11 Ala. App. 433, 66 South. 834. If, therefore, the forfeiture clause in the loan contract was valid, then the court committed error in sustaining plaintiff's demurrers to defendant's second rejoinder to the effect that there was no consideration for the contract of reinstatement. If the contract was nullified, it did require a new consideration for a new contract. The cases cited by appellee in brief present an entirely different question from the one involved here. In Washburn, Adm'r, v. U. C. Life Ins. Co., 143 Ala. 485, 38 South. 1011, and Galliher v. State Mutual Life Ins. Co., 150 Ala. 543, 43 South. 833, 124 Am. St. Rep. 83, before the policy had lapsed and while the company was still bound, a note was accepted for the payment of the premium, and the insured had thereby become obligated to pay the amount, independent of the policy contract. In Travelers' Ins. Co. v. Brown, 138 Ala. 526, 35 South. 463, a check was remitted for the premium before the policy lapsed, and it was shown that this was in accordance with the course of dealing that had existed between the parties. In all of these cases there was an independent obligation to pay the premium before forfeiture; in this case there was no such obligation. Neither was there any agreement, declaration, or course of action on the part of the insurance company before the date of the claimed forfeiture other than is disclosed by the contract itself, which could have led the insured honestly to believe that by conforming thereto a forfeiture of the policy would not occur. Unless there had been such action, it would not prevent a forfeiture. Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841. It therefore follows that on the facts as presented by the record, if the company was authorized to cancel the policy without having acquired title thereto, the defendant would be entitled to a judgment.

But this case was tried by the court without a jury, and judgment was rendered for plaintiff. Under the facts as presented by the record, whatever the trial court's views may have been with regard to other questions, if the forfeiture clause in the loan contract is void, or if the action taken by the defendant did not have the effect of canceling the contract of insurance, the plaintiff would be entitled to a judgment, and therefore, if the trial court was in error in its other holdings regarding waiver of forfeiture, such error would be without injury. Flowers & Peagler v. W. T. Smith Lbr. Co., 157 Ala. 510–512, 47 South. 1022;

L. & N. v. Johnson, 128 Ala. 638, 30 South. 580.

[1] The courts have uniformly held that agreements for the forfeiture of the policy for a nonpayment of premiums are valid and enforceable by the insurer. This upon the reasonable ground that on the prompt payment of the premiums depends the mutuality of the contract and the ability of the company to meet its obligations. New York Life Ins. Co. v. Curry, 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297. "But both the reason and the rule are restricted to the matter of premiums alone. Forfeitures are disfavored in law. When they are mere penalties for the nonpayment of borrowed money, they are not allowed. They lead to and themselves are, unconscionable oppressions of the unfortunate." N. Y. Life Ins. Co. v. Curry, supra.

[2, 3] In the present case, the question of the payment of premiums being eliminated, the question stands exactly in the position of any other party lending the money and taking the policy as a pledge to secure its repayment. There is no need for us to look to other facts or to phrases in the loan contract in order to see what that transaction was. By the terms of the agreement between the parties the deposit of the "paid-up policy" was a pledge, and, as such, the title remained in the pledgor (31 Cyc. 789; Williamson v. Culpepper, 16 Ala. 211, 50 Am. Rep. 175; Denis on Contracts of Pledge, par. 306), with the right in the pledgee to sell in case of default, but not to confiscate. Where the provision is that upon the debtor's default the title shall become absolute in the pledgee, it is void. 31 Cyc. 790; Williamson v. Culpepper, supra; Smith v. 49 and 56 Quartz Mineral Co., 14 Cal. 242.

[4] The sale is necessary because by default of payment or redemption the pledge does not become the property of the pledgee. He has only a lien on it. There must be a foreclosure of the pledge to pass the ownership of the thing either to the pledgee himself or to another purchaser. Denis, Contracts of Pledge, c. 25, par. 306.

There is nothing in the loan contract that provides for the extinguishment of the debt without the execution of a deed to the policy, the provision of paragraph (b) being for a settlement of the debt upon the execution and delivery of a surrender deed upon the company's form. This is the only provision in the contract for a foreclosure of the pledge, except the penalty, which, if exercised before the deed is executed, would leave the debt still owing to the company secured by a pledge of less value. This clause recognizes the necessity for a change of title to the policy, and there is no pretense that this transfer was ever made. Until the title to the policy is transferred according to its terms or foreclosed by due process, the title is still in the insured, with a debt owing by the insured to the company, with nothing to prevent the company from enforcing its claim by suit or otherwise; but it cannot penalize the insured by voiding and rendering less valuable the security which it holds. Such a rule would be unconscionable and not to be tolerated.

[5] Appellant refers to the policy as having lapsed. There is no such thing as a lapsed paid-up policy. These policies may be transferred by contract, so that for nonpayment of the amount borrowed, with interest, the title may pass, as with any other property that may be pledged or mortgaged, with the right in the pledgee to become the purchaser, and of course when the pledgee does become the purchaser, the insurance may be canceled, but this is not a lapse. In the case of Palmer v. Mut. Life Ins. Co., 114 Minn. 4, 130 N. W. 251, Ann. Cas. 1912B, 957, the contract provided, "In the event of default, etc., the company is hereby authorized at its option, without notice and without demand of payment, to cancel said policy and apply the customary cash surrender value then allowed by the company for the surrender or cancellation of similar policies, etc., to the payment of said loan, with interest," etc.; and in the loan contract the right, title, and interest of the insured in the policy was transferred, assigned, and set over to the company. The contract in the instant case does not purport to transfer the title or interest in the policy, but it is distinctly placed as a pledge. Of course, therefore, in the Palmer Case, supra, when default occurred and the company exercised its option, the title already being in the company, and the company applied enough of the value of the policy to the payment and extinguishment of the debt, paying or offering to pay the balance, if any, to the insured, it became a foreclosure according to the terms of the contract. But if the contract had provided for a sale at public outcry, with a guaranteed minimum value to be bid by the company, and the company should have undertaken to forfeit the policy without the formality of such sale, such forfeiture would not be recognized by the court. Yet, in effect, that is what the defendant in this case has undertaken to do. It has a loan contract under which the amount loaned is secured by a "paid-up policy" for $1,000, deposited as a pledge. The only provision in the contract for a divestiture of title is paragraph (b), which therefore would be by a deed. In the case of Frese v. Mut. Life Ins. Co., 11 Cal. App. 387, 105 Pac. 266, the title to the policy passed. In the case of Ruane v. Manhattan Life Ins. Co., 194 Mo. App. 214, 186 S. W. 1188, an entirely different question was involved, but in that case the title to the policy was in the company. In Hartford Life Ins. Co. v. Benson (Tex. Civ. App.) 187 S. W. 351, the title to the policy was in the company. The case of McCall v. International Life Ins. Co., 196 Mo. App. 318, 193 S. W. 862, is based upon a statute of Missouri and upon the original contract of insurance. Even in that case, the contract provides for a foreclosure, so as to divest title, which was done. In Sherman v. Mutual Life, 53 Wash. 523, 102 Pac. 419, the policy was assigned to the company as collateral, and provision made for its foreclosure in case of default.

In this case the rule that, where pledged property becomes forfeited to the pledgee for the nonpayment of debt at maturity, the clause is void, is distinctly recognized. Denis, Con-

tracts of Pledge, par. 302. In this connection it is pertinent to quote the language of Judge Story, who says: "If a clause is inserted in the original contract providing that, if the terms of the contract are not strictly fulfilled at the time and in the mode prescribed, the pledge shall be irredeemable, it will be of no avail, for the common law deems such a stipulation unconscionable and void, upon the ground of public policy, as tending to the oppression of debtors." Story on Bailments, § 345. But says the learned judge in the Sherman Case: "It is competent for * * * the contract to stipulate that the pledgee may buy the securities at private sale at the market price, in case of default in payment of the debt or that he may sell at public outcry or at private sale, with or without notice, and that he may become the purchaser." Denis, Contracts of Pledge, par. 311; Edwards, Bailments, par. 284; In re Mertens, 144 Fed. 818, 75 C. C. A. 548; Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059; Williams v. United States Trust Co., 133 N. Y. 660, 31 N. E. 29; Manning v. Schriver, 79 Md. 41, 28 Atl. 899. In Eagle v. N. Y. Life Ins. Co., 48 Ind. App. 284, 91 N. E. 817, the policy was transferred and assigned to the company and foreclosed according to the terms of the collateral agreement. Even in these cases, where the power of foreclosure is given, the pledgee is treated as the trustee of the pledgor, requiring the uttermost good faith and fairness in his dealings with the pledged property.

According to the best authority, the method of enforcement of a pledge may be regulated by the parties, and such agreements, when not fraudulent, or contrary to public policy, may be enforced by the courts. Hunter v. Hamilton, 52 Kan. 195, 34 Pac. 782. "And after the debt has become due the pledgor can validly agree that the pledgee may keep the property as his own in payment of the debt. The transfer of property in such cases takes place by virtue of an agreement subsequent to and independent of the original contract of pledge. The debtor is no longer under the pressure of necessity and constraint to submit to the exacting conditions of the creditor in applying for a loan of money." Denis, Contracts of Pledge, par. 303; Jones on Pledges, § 553; Troplong, Nantissement, § 403; Story, Bailments, § 345; Jones on Pledges, § 555.

But the pledgee is not entitled, upon the pledgor's default to take the property as his own in satisfaction of the debt. Hagan v. Continental National Bank, 182 Mo. 319, 81 S. W. 171; Seymour v. Ives, 46 Conn. 109; Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723; Diller v. Brubaker, 52 Pa. 498, 91 Am. Dec. 177; Jones on Pledges, § 554. There is a vast difference between the forfeiture of a policy for the nonpayment of a premium, and a cancellation for a failure to pay interest on a loan. In one case, the time of payment is of the essence of the contract. In the other, compensation is the basic rule for the measure of damages, and interest during the delay gives full compensation. For this reason, the stipulation in a loan contract for a forfeiture on failure to pay interest is a penalty and is void. Manhattan Life Ins. Co. v. Wright, 126 Fed. 82, 61 C. C. A. 138; St. Louis Mut. Life Ins. Co. v. Grigsby, 10 Bush (Ky.) 310; N. Y. Life Ins. Co. v. Curry, supra.

[6] Where insurance companies are engaged in making insurance contracts, they may stipulate forfeitures for nonpayment of premiums affecting the policy contract, and these forfeitures are valid; but when they engage in the business of loaning money they are in no different position than any other lender. If they loan money and accept their own policies as security, their rights as lenders are exactly what they would be if the borrower had pledged stocks or bonds or policies of other insurance companies, or given chattel or real estate mortgages. 3 Cooley's Briefs on Insurance, p. 2276. If the policy pledged in this case had been issued by another company, no one could contend that the pledgee could have any power to cancel the existent insurance on the life of the pledgor until it had acquired the legal title to the policy. Neither can the defendant do so when the policy is its own obligation. While the loan agreements of other standard life insurance companies are not in evidence, it will be interesting to note that the agreements from which appellant's counsel have taken and submitted excerpts contain clauses transferring the title to the company from the insured of the policy pledged, while in this case the title remains in the insured. "We cannot agree to the proposition that a paid-up life insurance policy has no value except the cash surrender value guaranteed in the policy, nor is the value so speculative that the courts will not recognize it." The cash surrender value is a minimum guaranteed value, based upon the legal reserve. The insurance value is based upon careful mathematical calculation, practically eliminating speculation, even to the date of the death of the class to which the insured belongs.

The defendant did not acquire the legal title to the policy by the loan contract, nor by deed, as stipulated in the contract, nor by foreclosure by due process of law; hence the defendant could not cancel the policy, and the stipulation in paragraph (b) could not be enforced as a penalty. Therefore the policy was in full force and effect at the time of the death of the insured, and the court did not err in rendering judgment for the plaintiff for the amount of the policy, less the loan which had been obtained upon it.

Affirmed.

## On Rehearing.

Opinion amplified, and application for rehearing overruled.