(81 South. 669)

BARROW v. BRENT.   (6 Div. 886.)

(Supreme Court of Alabama.   April 24, 1919.)

1. DETINUE ⬤⟿5—TITLE TO PROPERTY—SPECIAL POSSESSORY INTEREST.

Joint owners of personal property may by special agreement invest one of them with a special possessory interest in such property sufficient to sustain detinue.

2. DETINUE ⬤⟿5 — TITLE — SPECIAL POSSESSORY INTEREST.

Where the owner of a half interest in a hog agreed that plaintiff, who had already bought the other half interest from the owner and had the custody of the hog, might have his remaining half interest as security for a loan, which had never been repaid, plaintiff had such a special possessory interest in the hog as to sustain an action for detinue against a purchaser from the original owner.

3. SALES ⬤⟿234(3)—TITLE—RIGHTS OF INNOCENT PURCHASERS.

One who purchases chattels from another acquires no better title than his vendor had, although he purchases without notice of any infirmity in the title and for a valuable consideration.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Detinue by Judge Barrow against D. S. Brent. Judgment for defendant, and from a denial of a new trial, plaintiff appeals. Transferred from the Court of Appeals under

section 6, p. 449, Acts 1911. Reversed and remanded.

Plaintiff, appellant here, brought suit in detinue against the appellee (defendant) for "one red sandy sow about three years old." The cause was tried before the court without a jury, resulting in a judgment for the defendant. Plaintiff's motion for a new trial, on the ground that the judgment was contrary to the evidence and was unsupported by the evidence, was overruled, and the plaintiff prosecutes this appeal.

Plaintiff's testimony tended to show that the hog in question first belonged to his brother Jet Barrow, and was in the pasture of one S. E. Jones; that his brother Jet had no place to care for the hog, and agreed with plaintiff that if he would take the hog and feed and take care of it, he could have half the sow; plaintiff testifying:

"Take her on halves, half the sow to be mine and half his, and that I was to raise pigs, and half the pigs were to be mine and half his; then I was to fatten the hog and kill it, and half was to be mine and half his."

Plaintiff's testimony shows that this trade was made in August, 1917, in the pasture of S. E. Jones; that later on, about the 2d of September, 1917, his brother Jet came to him for a loan of $3.75, agreeing that, as security for the loan, plaintiff could have the other half of the hog, and that if he did not pay the money back within 30 days plaintiff would own the hog. Under these conditions the loan of $3.75 was made, and plaintiff avers that the money has never been paid back. It is further shown that on the day the first agreement was made the plaintiff took the hog out of the pasture, and put her in a pen which he had built on the property he rented. In November, 1917, plaintiff met the defendant, at which time the latter told the plaintiff he had bought the "sandy sow" from Jet and wanted to get her. Plaintiff told the defendant the sow was his, and repeated to the defendant, in substance, the agreement he had made with his brother Jet about the hog. That was the first notice plaintiff had of defendant's claim to said hog. This conversation with the defendant was on Saturday. On the following Monday, while the sow was in the pen, and the plaintiff was in his field working, the defendant came to his house, tore down the pen, without his knowledge or consent, and carried the sow to his (defendant's) home. Upon learning what had been done, plaintiff brought suit—the defendant being in possession of the hog at the time. Plaintiff's testimony also shows that he had been feeding and taking care of the hog since the time of his first agreement with his brother.

S. E. Jones testified as to hearing the conversation between the plaintiff and his brother in regard to the sale of the half interest in the sow, and also in regard to the $3.75 loan, and corroborated the plaintiff's testimony in these respects. The market value of the hog was shown to be $12.50 at the time the agreement was made, and about $35 at the time of the trial in the circuit court. The plaintiff has had the hog in his possession under a replevy bond.

Defendant's evidence tended to show that on October 31, 1917, Jet Barrow came to him and offered to sell the hog in question, stating that it belonged to him, and no one had any claim to it; that he (defendant) gave him $19 for the hog, and that Jet gave him a receipt for the same in full payment, and in the receipt directed his brother Judge to deliver said hog to the defendant. The defendant also testified to the conversation had with plaintiff, substantially as plaintiff had stated it, and further that complainant did not consent for him to get the hog, but that he went to plaintiff's house and got the hog; that Jet Barrow had fled the country under a criminal charge; that defendant had no notice or knowledge, when he bought the sow, that any one else claimed an interest in her. This was substantially all the testimony in the case.

Graham Perdue, of Birmingham, for appellant.

Frank S. Andress, of Birmingham, for appellee.

GARDNER, J. As we understand the evidence for the plaintiff, he was vested with a one-half interest in the hog—the subject-matter of this suit—and under the special arrangement had with his brother, who originally owned the hog, he was to have the care and custody of the same.

[1, 2] It is first insisted on the part of appellee that, should it be conceded that the plaintiff owned a one-half interest in the hog, no recovery could be had, for the reason a tenant in common cannot maintain a suit in detinue for his interest in property against the cotenant—citing Smith & Co. v. Rice, 56 Ala. 417.

This, of course, is a well-recognized general rule; but we think the evidence brings this case within the exception that joint owners may by special agreement invest one of them with a special possessory interest sufficient to sustain detinue. Under the special agreement made between the plaintiff and his brother, the possession of the hog was to be and remain with the plaintiff for the purposes agreed upon; and the plaintiff is shown to have had under this agreement a special possessory interest, which, we think, is sufficient to base an action of detinue. 14 Cyc. 249, note 40, wherein are cited the cases of Pierce v. Jackson, 56 Ala. 599; Raybourne v. Shakers Soc. (Ky.) 30 S. W. 622.

[3] One who purchases chattels from another acquires no better title than his vendor had, although he purchases without notice of any infirmity in the title and for a

valuable consideration. Bennett v. Brooks, 146 Ala. 490, 41 South. 149.

Appellee insists that the evidence in regard to the loan, and a pledge of a one-half interest in the hog as security therefor, was not sufficient to vest title in the plaintiff to said remaining one-half interest. Williamson v. Culpepper, 16 Ala. 211, 50 Am. Dec. 175; Smith v. Mineral Co., 14 Cal. 242; Travelers' Ins. Co. v. Lazenby (App.) 16 Ala. App. 549, 80 South. 25; J. E. Butler & Co. v. A. G. Henry & Co., ante, p. 155, 79 South. 630.

The conclusion we have reached, however, does not require a consideration of that question, for, as previously shown, we are of the opinion that, under the special agreement disclosed by the proof, the plaintiff may maintain the suit in detinue, although it be conceded that he only owns a one-half interest in the hog. The evidence offered by the plaintiff was without conflict, and was in no manner impeached, and therefore, indulging presumptions in favor of the ruling of the court below, we are still of the opinion the judgment rendered was erroneous, and the plaintiff's motion for a new trial should have been granted. The judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.